## IN THE COMMON PLEAS COURT OF DARKE COUNTY, OHIO
### CIVIL DIVISION

Peter H. Heins, (Individually)
711 Dull Road
Arcanum, OH 45304
     Plaintiff,
&

Peter H. Heins, Administrator
Of the Estate of Clayton Michael Heins
711 Dull Road
Arcanum, OH 45304
     Plaintiff,
v.

Commerce and Industry Insurance Company
dba AIG (Aerospace Insurance Services)
175 Water Street; 18th Floor
New York, NY, 10038
     Defendant,
&

AIG Aerospace Adjustment Services, Inc.
500 West Madison Street, Suite 3000
Chicago, IL 60611
     Defendant.

Case No. ⋒⋎ 00111

Judge Hein

**COMPLAINT WITH**
**JURY DEMAND**
**ENDORSED THEREON**

FILED
COMMON PLEAS COURT
DARKE COUNTY OHIO
2017 MAR -6 PM 3:25
CINDY PIKE
CLERK

---

1.     Plaintiff (Individually) states that the Defendant Commerce and Industry Insurance company ("The Company") is a casualty and property insurance company which regularly solicits, and transacts business in the State of Ohio.

2.     AIG Aerospace Adjustment Services, Inc., ("AIG") was, at all times material hereto, an agent of the Defendant Commerce and Industry Insurance Company which regularly solicits and transacts business in the State of Ohio.

3.      Plaintiff (Individually), Peter H. Heins is a natural person who, at all times material hereto, was the registered owner of a 1947 Piper PA-11 Aircraft, U. S. Registration No. N4910M ("The Aircraft")

4.      Plaintiff states that he was appointed Administrator of the Estate of Clayton Michael Heins by the Probate Court of Darke County Ohio, on November 1, 2016.

5.      The Company issued an aircraft policy of insurance, No. LP006364456-01 to Plaintiff (Individually) which was effective from April 15, 2016 to April 15, 2017, ("Policy") (A copy of the Policy is attached hereto as Exhibit A)  which Policy provided for a payment for property damage to The Aircraft in the amount of $50,000 in the event of total loss due to theft of the aircraft; liability insurance in the amount of $100,000 per passenger and an aggregate of $1,000,000; medical (including funeral) expense for passengers, including crew up to $10,000; and further required The Company to, "...defend and settle any suit or claim covered by this insurance...."

6.      On September 14, 2016, while The Aircraft had been the object of a wrongful deprivation of The Aircraft  without claim or color of right and with an unreasonable risk of permanent loss to Plaintiff (Individually), The Aircraft impacted the earth causing 1) the total destruction to and loss of The Aircraft, 2) the death of Clayton Michael Heins and Jacob Andrew Turner.

7.      On September 22, 2016, counsel on behalf of Plaintiff (Individually) wrote to AIG Aerospace Insurance Services, Inc., Aviation Managers for The Company requesting that The Company provide Plaintiff (Individually) with a defense to any and all claims which might be asserted by the next of kin, survivors, or estate of Mr. Jake Turner as required by Part One, ¶ 5 of The Policy and for the agreed value of The Aircraft as required by Part One, ¶ 3, of The Aircraft.

8.      On September 22, 2016, Plaintiff's counsel also requested proof of loss and claim forms be provided to Plaintiff (Individually).

9.      On September 22, 2016, AIG, as agent for The Company, wrote Plaintiff (Individually) that, among other things, "We have established a claim file in order to investigate the circumstances surrounding this matter. I wish to inform you that this claim file has been so established under a Reservation of Rights to fully investigate all of the circumstances surrounding this matter without prejudice to the policy for insurance coverage." (A copy of this letter is attached hereto as Exhibit B)

10.     On January 3, 2017, Lisa M. Shank, as Administrator of the Estate of Jacob Andrew Turner, Deceased, filed suit in the Darke County Common Pleas Court (Case No. 17 CV 00001) against Plaintiff (Individually), alleging that Plaintiff (Individually) recklessly and negligently entrusted The Aircraft to Clayton Michael Heins, Deceased, which reckless and negligent entrustment of The Aircraft directly and proximately caused The Aircraft to crash causing the death of Jacob Andrew Turner.

11.     Upon receipt of the Complaint and Summons, on behalf of Plaintiff counsel immediately forwarded the Complaint and Summons in Case No. 17 CV 00001, to AIG, as agent for The company.

12.     On January 24, 2017 AIG, as agent for The Company wrote Plaintiff (Individually) and Plaintiff's Counsel, "... AIG Aerospace will accept defense of the matter and retain defense counsel to represent our insured Peter H. Heins under the terms of aviation policy LP 006364456-01...acceptance and retention of defense counsel is specifically limited to the SIXTH cause of Action of the received Complaint..." (A copy of this letter is attached hereto as Exhibit C)

13.     On February 21, 2017, counsel retained by The Company filed an answer on behalf of Plaintiff (Individually) contesting the allegations in the SIXTH cause of action in Case No. 17 CV 00001.

14.     On February 22, 2017 the Company, through legal counsel, notified Plaintiff (Individually) that it was rejecting the claim for the physical damage to the aircraft; it was not providing coverage for the bodily injury and death of Jacob Andrew Turner, and it was not providing Plaintiff (Individually) with a defense to the claim against him made in Case No. 17 CV 00001.

## FIRST CLAIM FOR RELIEF

15.     Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 14 as though fully restated herein.

16.     By having reserved its rights limited to, "investigate the circumstances surrounding all of the circumstances surrounding this matter without prejudice to the policy for insurance coverage," and by having retained counsel and filing an Answer contesting the allegations in the SIXTH cause of action in Case No. 17 CV 00001, The Company has waived and is estopped from asserting any rights to refrain from defending and paying the claims against Plaintiff (Individually) alleged in the SIXTH cause of action in the Complaint in Case No. 17 CV 00001.

## SECOND CLAIM FOR RELIEF

17.     Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 16 as though fully restated herein.

18.     By having reserved its rights limited to, "investigate the circumstances surrounding all of the circumstances surrounding this matter without prejudice to the policy for insurance coverage," and by having retained counsel and filing an Answer contesting the allegations in the SIXTH cause of action in Case No. 17 CV 00001, and thereafter rejecting the claim for the physical damage to the

aircraft, refusing to provide coverage for the bodily injury and death of Jacob Andrew Turner, and withdrawing its defense of Plaintiff (Individually) to the claims alleged in the SIXTH cause of in Case No. 17 CV 00001, the Company has acted and continues to act in bad faith.

### THIRD CLAIM FOR RELIEF

19.     Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 18 as though fully restated herein.

20.     Under the terms of The Policy, The Company is required to defend and pay the claims alleged in the SIXTH cause of action in Case No. 17 CV 00001.

### FOURTH CLAIM FOR RELIEF

21.     Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 20 as though fully restated herein.

22.     Because The Aircraft had been the object of a wrongful deprivation of The Aircraft without claim or color of right and with an unreasonable risk of permanent loss to Plaintiff (Individually) on September 14, 2016 immediately prior to its impacting with the earth, The Company is estopped and precluded from denying coverages and its duty to defend Plaintiff (Individually) against the claims stated in the SIXTH cause of Action in Case No. 17 CV 00001 and its denial of coverages.

23.     The Company's rejection of the claim for the physical damage to the aircraft, refusal to provide coverage for the bodily injury and death of Jacob Andrew Turner, and its withdrawal of from defending Plaintiff (Individually) the claim against him made in Case No. 17 CV 00001 were actions made in bad faith.

### FIFTH CLAIM FOR RELIEF

24.     Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 23 as though fully restated herein.

25.    The Company has rejected the claim for the total physical loss of the aircraft contrary to the terms of The Policy and in bad faith.

## SIXTH CLAIM FOR RELIEF

26.    Plaintiff restates and reiterates all of the allegations contained in ¶ 1 through ¶ 25 as though fully restated herein.

27.    Plaintiff, as Administrator for the Estate of Clayton Michael Heins is entitled to reimbursement for funeral and burial expenses advanced on behalf of the Estate of Clayton Michael Heins in the amount of $10,000, and has withheld any payment therefor in bad faith.

**WHEREFORE:**

Plaintiff (Individually) prays for a permanent injunction requiring The Company to provide Plaintiff (Individually) with a defense to the claims asserted against him in the SIXTH cause of action in Case No. 17 CV 00001.

As an alternative to the injunctive relief sought in the previous paragraph, Plaintiff (Individually) prays that The Company be required to reimburse him for the reasonable costs of attorney fees, expenses of suit, and expenses incurred in the preparation and trial of the defense of the claims alleged in the SIXTH cause of action in Case No. 17 CV 00001.

Plaintiff (Individually) prays that the Company indemnify him and pay all claims in the SIXTH cause of action in Case No. 17 CV 00001 up to $110,000.

Plaintiff (Individually) further prays for damages for the property damage to The Aircraft in the amount of $50,000 and interest from September 24, 2016.

Plaintiff (Individually) prays for punitive damages against the Defendants, jointly and severally and in the alternative in an amount in excess of $ 25,000. (TWENTY FIVE THOUSAND DOLLARS)

Plaintiff, Administrator of the Estate of Clayton Michael Heins, Deceased, prays for judgment against The Company in the amount of $10,000 plus interest.

Plaintiff (Individually) prays for reasonable attorney fees, expenses of suit, costs, and such other relief to which he may be entitled in law or in equity.

Respectfully submitted,

Konrad Kuczak, Ohio Reg. 0011186
Trial Attorney for Plaintiff
130 West Second Street, Suite 1010
Dayton, OH 45402-1588
(937) 228-8363 Telephone
(937) 228-0520 Facsimile
Email your_lawyer @ sbcglobal.net



Aviation Insurance Contract

 Bring on tomorrow

EXHIBIT A

## AIRCRAFT INSURANCE POLICY
## COVERAGE SUMMARY PAGE

This page, the policy provisions, and the endorsements attached, completes this policy at its inception.

Policy number LP 006364456-01    Issued by: COMMERCE AND INDUSTRY INSURANCE COMPANY
175 WATER STREET, 18TH FLOOR, NEW YORK, NY 10038

Item 1.  **Your** Name and Address:  PETER H. HEINS
7111 DULL RD
ARCANUM, OH  45304-9242, USA

Item 2.  Policy Period: From  April 15, 2016                  to   April 15, 2017
Beginning and ending at 12:01 a.m. standard time at the address shown in Item 1. above.

Item 3.   Coverage only applies as indicated by a specific limit, premium and deductible.

| | | Limits of Liability | | | | Premiums |
|---|---|---|---|---|---|---|
| A. | **Aircraft** Liability Single Limit for **Bodily Injury** and **Property Damage** __In__ cluding **Passengers**, but **Passenger Bodily Injury** Limited within the Single Limit to | $ 1,000,000. each occurrence | | | | $ 245. |
| | | $ 100,000. each passenger | | | | |
| B. | **Medical Expense** __In__ cluding crew | $ 10,000. each passenger | | | | $ 0. |
| C. | **Physical Damage to Your Aircraft** | | | | | |

| | | | | Deductibles | | | |
|---|---|---|---|---|---|---|---|
| ID Number | Year | Make and Model | Agreed Value | Not-in-Motion | Not-in-Flight | Flight | |
| N4910M | 1947 | PIPER PA 11 | $ 50,000. | $ 0. | $ 0. | $ 0. | $ 780. |
| | | | $ | $ | $ | $ | |
| | | | $ | $ | $ | $ | |
| | | | $ | $ | $ | $ | |
| | | | $ | $ | $ | $ | |
| | | | $ | $ | $ | $ | |

Endorsements: OLAD01 9/00, LAD180, LAD1541, AVN48B, UE1066, AVN38B, AV882, AVN46B, $ 1.
LAD857, UE858, 71223, UE1437, SE52162

State and Local Premium Taxes and Surcharges:                             $  0.00

Total Premium   $ 1,026.00

Item 4.   The aircraft will be used only for **non-commercial** use.

Item 5.   While the **aircraft** is in **flight** it will be piloted only by the person(s) meeting the provisions of the "Pilots Endorsement".

Producer   AOPA INSURANCE AGENCY, INC.
A00092   P. O. BOX 9170, , WICHITA, KS  67277

Countersigned _____

At _____

By _____        Approved By _____
(Authorized Representative)                                     (Authorized Representative)

OLAD03 (1/00)                          Page One

## PILOTS ENDORSEMENT

In consideration of __Additional__ premium of $____(Included)__ , Item 5 on Page One is completed as follows, but only with respect to __N4910M__

A) While the **aircraft** is in **flight** it will be piloted only by the person(s) specifically named as pilot(s) for **your aircraft** listed below, provided that the pilot-in-command has:
1. a current and valid FAA Pilots Certificate with ratings and endorsements applicable to **your aircraft**, or is under the direct supervision of a Certified Flight Instructor;
2. if required, a current and valid **FAA** Medical Certificate;
3. if required, a current and valid Biennial Flight Review;
4. logged or is receiving the dual flight instruction required below and receives a written endorsement from a Certified Flight Instructor to solo the same make and model as **your aircraft**;
5. logged the solo flight(s) in the same make and model as **your aircraft** prior to carrying **passengers**.

The dual flight instruction required below must be given by a Certified Flight Instructor that meets the requirements of paragraph B) below, whether an "X" appears in the box or not, or these named pilots:

_____

The dual flight instruction must include ground instruction with an emphasis on aircraft performance, aircraft systems, fuel management, and emergency procedures. The flight portion must include basic aircraft control, aircraft systems management, and emergency procedures.

| PILOT(S) | DUAL FLIGHT INSTRUCTION PRIOR TO SOLO (hours  /  flights) | SOLO FLIGHT(S) PRIOR TO CARRYING PASSENGERS (hours  /  flights) |
|---|---|---|
| PETER H HEINS | | |

B) ☒ If an "X" appears in this box, the **aircraft** may also be piloted by any person who has **your** permission and has:
1. a current and valid **FAA** Private, Commercial, or ATP pilot certificate with ratings and endorsements applicable to **your aircraft**,
   ☐ including an instrument rating, if an "X" appears in this box;
2. if required, a current and valid **FAA** Medical Certificate;
3. if required, a current and valid Biennial Flight Review;
4. at least:
   __500__ total logged hours as pilot-in-command of aircraft, of which includes the following hours in the aircraft described below:
   __25__ same make and model as **your aircraft**
   __100__ aircraft with the same type of retractable and/or tail-wheel landing gear as **your aircraft** being flown
   _____ multi-engine powered fixed wing aircraft
   _____ turbine powered aircraft
   _____ fixed wing seaplanes
   _____ rotorcraft
   _____ sailplanes

☐ If an "X" appears in this box, all pilots meeting the requirements in items A) and B) above must also have successfully completed the aircraft manufacturer's approved ground and flight training program, or its equivalent as approved by the **Aviation Managers**, in the same make and model being flown, within the twelve (12) months immediately preceding any and all flights covered by this policy.

With respect to sailplanes, the word "hours" is replaced by the word "flights".

C)  Regardless of the above, the following pilot(s) are specifically <u>not</u> approved to pilot the aircraft, including manipulation of the aircraft controls in any manner or at any time whatsoever:

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of Policy No. __ LP 006364456-01 __ Issued to __ PETER H. HEINS __

By __ COMMERCE AND INDUSTRY INSURANCE COMPANY __

Endorsement No. ____ 1 ____

Date of Issue _____ April 18, 2016 _____          By _____
                                                              (Authorized Representative)

LAD180 (9/99)                    Page 2

## BROAD COVERAGE ENDORSEMENT

In consideration of a flat charge of $ _____Included_____ , we agree to add the following coverages to **your** policy as respects _All Aircraft insured here under_ _____ :

The premium for this endorsement is fully earned. If **you** cancel the coverage provided in this endorsement, the premium charged above will not be returned.

1. AIRCRAFT VALUE APPRECIATION COVERAGE

    In the event of a **Total Loss**, the **Agreed Value** for **your aircraft** shown in Item 3 on Coverage Summary Page will be increased for the "Amount of Appreciation" during this policy period, subject to the following:

    The "Amount of Appreciation" shall be the percentage difference in the "base average retail value" for **your aircraft** from the effective date that the **Agreed Value** is acknowledged and reflected in this policy, until the **total loss**. If this policy is **our** renewal of coverage for **your aircraft**, the "Amount of Appreciation" will be for a period of not less than 90 days prior to the **total loss**. The "Amount of Appreciation" applied to the **agreed value** shall not exceed 5%.

    The "base average retail value" must be published in **our** "aircraft value reference source", and shall not include any adjustment for engine time, avionics, condition, or any other aircraft modification or additional equipment.

    **Our** "aircraft value reference source" will be those in effect during the term of this endorsement.

2. BAGGAGE LIABILITY

    Exclusion 6. a) is deleted and replaced with the following:

    a) up to $5,000. per **passenger** for **loss** to **personal effects**, subject to an **occurrence** limit equal to $5,000. multiplied by the total number of seats for the **aircraft** involved;

3. BODILY INJURY EXCLUSION AMENDMENT

    Exclusion 2. is deleted.

4. EMERGENCY LANDING

    This coverage applies only if **you** have purchased In Flight Physical Damage Coverage C:

    If a pilot named in Item 5. is forced to make an emergency landing away from an airport and there is no **physical damage to your aircraft**, **we** will pay the reasonable cost to transport **your aircraft** to the nearest airport. The most **we** will pay under this coverage is $15,000. for any one **occurrence** and in the annual aggregate. **You** must notify **us** prior to transporting the aircraft and **we** must agree to the transportation arrangement.

5.   EQUIPMENT COVERAGE

**Physical Damage** Coverage is amended to include the following portable and/or additional **aircraft** equipment for which **you** own or lease:

| Type of Equipment | Estimated Value | |
|---|---|---|
| Portable Avionics, Headsets | $ | 1,000. per **occurrence** |
| Safety Equipment | $ | 1,000. per **occurrence** |
| Aircraft Spare Parts | $ | 25,000. per **occurrence** |

With respect to the coverage provided by this section:

a)   The term **agreed value**, as found in the policy provisions, means the Actual Cash Value of the portable and/or additional **aircraft** equipment at the time of issuing this endorsement.

b)   Paragraph 1 of COVERAGE C under the Limits of the Company's Liability is deleted and replaced with the following:

  1.   the Actual Cash Value of the portable and/or additional **aircraft** equipment at the time of **loss**, but not to exceed its per **occurrence** limit;

"Actual Cash Value" is an amount equivalent to the replacement cost of lost or damaged property at the time of the loss, less depreciation.

6.   EXPENSE FOR RENTING SUBSTITUTE AIRCRAFT

Only with respect to **aircraft** having **Flight** Coverage C:

a)   The **Company** will pay the reasonable expenses incurred by **you** for renting a similar substitute **aircraft** necessitated by **physical damage** to an **aircraft** scheduled on Item 3 on Coverage Summary Page, for up to ninety (90) consecutive days after the **loss** or occurrence; subject to the **Company's** Limit of Liability below.  The **Company** will also pay for up to one hour of dual instruction for purposes of completing a rental checkout in the substitute **aircraft**.  This is part of and not in addition to the limit of liability stated below.

b)   LIMIT OF LIABILITY

  1)   $1,000. for each day, each **aircraft**, but not to exceed

  2)   $14,000. any one **loss** or occurrence, each **aircraft**.

c)   Coverage does not apply to expenses:

  1)   If **you** acquire through ownership, lease, lease-purchase option, or otherwise a permanent replacement **aircraft**;

  2)   Incurred after the **Company** has offered **you** proof of **loss** with respect to the insured **aircraft**, but this clause only applies if the insured **aircraft** is a **total loss**;

3) Incurred after repairs covered under Coverage C on **your** aircraft have been completed;

4) For storage, parking, tie-down, hangaring, landing, servicing, fueling or maintenance fees or charges, operating costs, or crew salaries or fees.

5) If we pay any expenses for renting substitute aircraft parts.

7. EXPENSE FOR RENTING SUBSTITUTE AIRCRAFT PARTS

Only with respect to **aircraft** having **Flight** Coverage C:

The **Company** will pay the reasonable extra expense, including the direct cost of installation, removal and transportation, incurred by **you** for renting or leasing aircraft parts as temporary substitutes for **aircraft** parts:

a) damaged and being repaired, or

b) destroyed and being permanently replaced,

caused by a **Physical Damage loss** covered by this policy to an **aircraft** shown on Item 3. of the Coverage Summary Page for the necessary repair period up to   90   days after the **loss** or **occurrence**.

The Limit of the **Company's** Liability with respect to the coverage provided by this endorsement shall not exceed:

   $5,000. each loss, regardless of the number of such substitute parts or **aircraft**.

The coverage provided herein shall be in addition to the Limit of Liability shown in Item 3 on the Coverage Summary Page.

This endorsement does not apply:

1. if the **aircraft** to which this endorsement applies is a **total loss;**
2. to any aircraft part not necessary for normal **flight;**
3. to **your** spare parts;
4. to parts under existing rental, lease or exchange agreements;
5. to charges for wear, tear or depreciation, damage, **loss**, loss of use, maintenance, repairs or operating costs;
6. to charges incurred after such damaged or destroyed part has been permanently repaired or replaced;
7. to charges incurred while such **aircraft** or temporary substitute part is unusable on account of:

   a) an Airworthiness Directive, factory Service Bulletin, airworthiness inspection, breakdown;

   b) malfunction or unsuitability;

8. if we pay any expenses for renting substitute aircraft.

8.  HURRICANE PROTECTION COVERAGE

If the U.S. National Weather Service issues a "Hurricane Watch or Warning" for the area where **your aircraft** is principally based, **we** will reimburse **you** for a portion of the costs incurred by **you** to protect **your aircraft**, subject to the following:

a)  **Your aircraft** must be relocated to another airport, which is at least 100 nautical miles away and not under a "Hurricane Watch or Warning".

b)  This coverage only applies to **aircraft** listed in Item 3 of the Coverage Summary Page which have **Aircraft Physical Damage** Coverage C.

**Our** portion of the costs shall not exceed $1,000. of the amount **you** incur to relocate the **aircraft**, for any one relocation during the policy period. The costs include the hiring of a pilot, who is not employed by **you**, and who meets the requirements of the Pilot Endorsement. **Your** costs must be properly receipted, documented and submitted to **us** for reimbursement.

9.  **NON-OWNED AIRCRAFT LIABILITY AND MEDICAL EXPENSE**

INSURING AGREEMENT 4. b) is deleted and replaced by the following:

b)  use of **non-owned aircraft** by **you**.

In addition to the Exclusions applicable to Coverages A and B, the coverage provided by this paragraph does not apply to:

a)  **Property Damage** to, destruction of, or loss of use of **non-owned aircraft**;

b)  Claims arising out of any product designed, manufactured, sold, distributed, serviced or handled by any **insured**;

c)  Claims arising out of any **aircraft** rented to, financed for, or leased to others, or repossessed or reacquired by any **insured**, subsidiary, owned or controlled firm thereof.

10.  NON-OWNED HANGAR AND CONTENTS

Exclusion 6.b) is deleted and replaced with the following:

b)  up to $__50,000.__ each occurrence for **property damage** to a hangar **you** rent, and its contents **you** do not own.

11.  **NON-OWNED AIRCRAFT PROPERTY DAMAGE** LIABILITY COVERAGE

If **you** have purchased **Flight Physical Damage** Coverage, Insuring Agreement 4. - Liability Insurance For **Your** Use of **Non-Owned Aircraft** is extended to apply to **your** legal liability for **property damage** to **non-owned aircraft** used by **you**.

**Our** limit of liability for **property damage** to a **non-owned aircraft** will be no more than the greatest amount of **flight** coverage that **you** purchased for **your aircraft**, shown as the **agreed value** on Coverage Summary Page One, or $50,000. whichever is more.

The coverage provided hereunder shall be part of and not in addition to the limit of liability stated in Coverage A on the Coverage Summary Page.

12. **PERSONAL INJURY**

Coverage A is amended to include **Personal Injury** Liability Insurance, but the most we will pay is the lesser of:

a) limit of liability shown in Item 3 on Coverage Summary Page any one offense and in the annual aggregate;

b) $ 1,000,000. any one offense and in the annual aggregate.

**Personal Injury** means injury other than **bodily injury** arising from false arrest, detention, imprisonment, malicious prosecution, or eviction of a person from **your aircraft**. **Personal injury** does not include any one offense and in the annual aggregate:

a) arising out of the willful violation of a penal statute or ordinance committed by or with **your** consent or the consent of anyone else;
b) that **you** or anyone else has agreed to assume for others;
c) arising out of the past, present or future employment of anyone.

13. **PREMISES**

Coverage A is extended to **bodily injury** and **property damage** for which **you** are legally liable, caused by an **occurrence** and arising out of the maintenance or use of the **premises** in or upon which **your aircraft** is stored.

**Premises** means the portions of an airport as are designated and used for the parking or storage of **your** aircraft, including premises owned or maintained by **you**.

The insurance provided by this Paragraph 13. will be secondary to and excess over any other valid and collectible insurance available to **you**.

14. RETURN PREMIUM

The following phrase is deleted from Conditions of Insurance, Item 9. Cancellation:

**We** shall not be liable for any return **physical damage** premium with respect to an **aircraft** on which a **total loss** has been paid.

15. PRODUCTS LIABILITY - SALE OF **AIRCRAFT**

Liability Coverage A is extended to include all sums which **you** become legally obligated to pay for an **occurrence** arising from **your** lease relinquishment or sale of **your aircraft** described in Item 3 on Coverage Summary Page.

This coverage shall apply only if the **bodily injury** or **property damage** occurs away from the **premises** used by **you** and after physical possession of the aircraft has been relinquished to others.

The most we will pay is the lesser of:

a) limit of liability shown in Item 3 on Coverage Summary Page any one **occurrence** and in the annual aggregate;
b) $ 1,000,000. (subject to the **passenger bodily injury** limit indicated in Item 3 on Coverage Summary Page any one **occurrence** and in the annual aggregate.

The coverage provided by this provision shall remain in effect for six (6) calendar months following the date of the sale of the covered **aircraft**.

16. TRIP INTERRUPTION COVERAGE

**We** will reimburse **you** for "Trip Expenses" that **you** incur for alternate transportation of **passengers**, because of a **loss** that is otherwise covered by this policy, subject to the following:

a) "Trip Expenses" include only the transportation costs:

    1) incurred after a **loss**, which renders the **aircraft** unairworthy and remains so at the time **you** incur the "trip expenses";

    2) from the place of **loss** to the original destination or the **aircraft's** home airport, whichever is closer;

    3) up to $250. each **passenger** and $1,500. each **occurrence** and must be properly receipted, documented and submitted to **us** for reimbursement.

b) The **aircraft** involved in the **loss** must appear in Item 3 of the Coverage Summary Page with **Flight Physical Damage** Coverage C.

All other provisions of this policy remain the same.

This endorsement becomes effective _____April 15, 2016_____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to __PETER H. HEINS__ _____

By __COMMERCE AND INDUSTRY INSURANCE COMPANY__ _____

Endorsement No. _____2_____

Date of Issue _____April 18, 2016_____          By _____
                                                                          (Authorized Representative)

LAD1541 (10/10)                    Page 6

## WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____April 15, 2016_____ to be attached to and hereby made a part of Policy No. ___LP 006364456-01___ issued to ___PETER H. HEINS___

By ___COMMERCE AND INDUSTRY INSURANCE COMPANY___

Endorsement No. ___3___

Date of issue _____April 18, 2016_____ By _____
(Authorized Representative)

AVN48B (1/02)

## TERRORISM EXCLUSION - CERTIFIED ACTS

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (collectively, "TRIA") as follows:

(1) ACT OF TERRORISM. –
    (A) CERTIFICATION. - The term "act of terrorism" means any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States –
        (i) to be an act of terrorism;
        (ii) to be a violent act or an act that is dangerous to –
            (I) human life;
            (II) property; or
            (III) infrastructure;
        (iii) to have resulted in damage within the United States or outside of the United States in the case of-
            (I) an air carrier or vessel [described in TRIA]; or
            (II) the premises of a United States mission; and
        (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B) LIMITATION. - No act shall be certified by the Secretary as an act of terrorism if -
        (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
        (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
    (C) DETERMINATIONS FINAL. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

THE PROVISIONS OF THIS ENDORSEMENT SHALL APPLY SOLELY TO TRIA AND SHALL IN NO WAY AFFECT THE PROVISIONS OF THE WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION), FORM NO. AVN48B, OR ANY AMENDMENTS THERETO.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to __PETER H. HEINS__

By __COMMERCE AND INDUSTRY INSURANCE COMPANY__

Endorsement No. ____4____

Date of Issue ____April 18, 2016____ By _____
                                                    (Authorized Representative)

UE1066 (01/15)

## NUCLEAR RISKS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover:

    (i)   loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    (ii)  any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

    (a)   the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

    (b)   the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

    (c)   ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2.  It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

    (i)   depleted uranium and natural uranium in any form;

    (ii)  radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3.  This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

    (i)   the Insured under this policy is also an insured or an additional Insured under any other insurance policy, including any nuclear energy liability policy; or

    (ii)  any person or organization is required to maintain financial protection pursuant to legislation in any country; or

    (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

4.  Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason of paragraph 2. shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided that:

(i)  in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

(ii)  this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

(iii)  in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter<br><br>(IAEA Health and Safety Regulations) | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 cm$^2$) |
|---|---|
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 bequerels / cm$^2$ ($10^{-4}$ microcuries / cm$^2$) |
| All other alpha emitters | Not exceeding 0.4 bequerels / cm$^2$ ($10^{-5}$ microcuries / cm$^2$) |

(iv)  the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to __PETER H. HEINS__ _____

By __COMMERCE AND INDUSTRY INSURANCE COMPANY__ _____

Endorsement No. _____5_____

Date of Issue _____April 18, 2016_____        By _____
                                                      (Authorized Representative)

AVN38B (1/02)              Page 2

## ASBESTOS EXCLUSION ENDORSEMENT

This policy does not cover any claims of any kind whatsoever directly or indirectly relating to, arising out of or in consequence of:

1.  The actual, alleged or threatened exposure to or presence of asbestos in any form whatsoever, including, but not limited to, asbestos fibers or asbestos dust, or any material or product containing, or alleged to contain, asbestos; or

2.  Any obligations, request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, neutralize, protect against or in any other way respond to the actual, alleged or threatened exposure to or presence of asbestos in any form whatsoever, including, but not limited to, asbestos fibers or asbestos dust, or any material or product containing, or alleged to contain, asbestos.

However, the exclusion shall not apply to any claim for asbestos exposure caused by or resulting from a crash, fire, explosion, or collision or a recorded in flight emergency causing abnormal aircraft operations.

Notwithstanding any other provisions of this Policy, Insurers will have no duty to investigate, defend or pay defense costs in respect of any claim excluded in whole or in part under paragraphs 1. or 2. hereof.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of
Policy No. __ LP 006364456-01 __ issued to __ PETER H. HEINS __

By __ COMMERCE AND INDUSTRY INSURANCE COMPANY __

Endorsement No. _____ 6 _____

Date of Issue _____ April 18, 2016 _____ By _____
(Authorized Representative)

AV882 (3/04)

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

    (a)  noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

    (b)  pollution and contamination of any kind whatsoever,

    (c)  electrical and electromagnetic interference,

    (d)  interference with the use of property;

    unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2.  With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

    (a)  claims excluded by paragraph 1., or

    (b)  a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3.  In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy:

    (a)  damages awarded against the Insured and

    (b)  defense fees and expenses incurred by the Insured.

4.  Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of
Policy No. ___LP 006364456-01___ issued to ___PETER H. HEINS___

By ___COMMERCE AND INDUSTRY INSURANCE COMPANY___

Endorsement No. ___7___

Date of Issue _____April 18, 2016_____ By _____

(Authorized Representative)

AVN46B (1/02)

## EXCLUSION DELETION ENDORSEMENT

**Physical Damage** Coverage
(Terrorism Risk Insurance Program Reauthorization Act of 2015)

In consideration of an additional premium of $_____(Included)_____ , this policy is amended as follows:

Notwithstanding anything in the policy to the contrary, this endorsement provides the coverages shown below:

### Exclusion Deletion

Endorsement UE1066 - entitled Terrorism Exclusion - Certified Acts - is hereby deleted from this policy except as to those aircraft listed below.  The deletion of UE1066 shall in no way affect the provisions of the War, Hi-Jacking and Other Perils Clause (Aviation), Form No. AVN48B or any amendments thereto.

| ID Number | Make and Model | Year | Agreed Value |
|-----------|----------------|------|--------------|

Coverage provided by this endorsement is subject to the terms, exclusions, conditions and limitations of the policy to which it is attached.

All other provisions of this policy remain the same.

This endorsement becomes effective _____April 15, 2016_____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to __PETER H. HEINS__

By __COMMERCE AND INDUSTRY INSURANCE COMPANY__

Endorsement No. ___8___

Date of Issue _____April 18, 2016_____ By _____
(Authorized Representative)

LAD857 (01/15)

## EXCLUSION DELETION ENDORSEMENT

Liability Coverage
(Terrorism Risk Insurance Program Reauthorization Act of 2015)

In consideration of an additional premium of $ _____$1 (Included)_____ , this policy is amended to provide such coverage as is set forth below:

(A)  EXCLUSION DELETION

Endorsement UE1066 - entitled Terrorism Exclusion - Certified Acts - is hereby deleted from this policy. The deletion of UE1066 shall in no way affect the provisions of the War, Hi-Jacking and Other Perils Exclusion Clause (Aviation), Form No. AVN48B, or any amendments thereto.

(B)  LIMITATION OF LIABILITY

The limit of the Company's liability for the coverage contemplated by this Endorsement shall be included within and shall not be in addition to the limits of liability provided under this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____April 15, 2016_____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to  PETER H. HEINS _____

By  COMMERCE AND INDUSTRY INSURANCE COMPANY _____

Endorsement No. _____9_____

Date of Issue _____April 18, 2016_____   By _____

(Authorized Representative)

UE858 (01/15)

## AVIATION DATE RECOGNITION ENDORSEMENT WITH LIMITED COVERAGE GRANT
## AIRCRAFT OPERATORS OPTION 4

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

a) the failure or inability of any computer hardware, software, integrated circuit, chip, computer component or other information technology equipment or system (whether in the possession of the **Insured** or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with:

- the change of year from 1999 to 2000; and/or
- the change of date from 21 August 1999 to 22 August 1999; and/or
- any other change of year, date or time;

whether on or before or after such change of year, date or time;

b) any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip, computer component or other information technology equipment or system (whether in the possession of the **Insured** or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

c) any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the **Insured** or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

HOWEVER, in consideration of the additional premium of $ __(Included)__ , it is hereby understood and agreed that this endorsement shall not apply to:

1. any accidental loss of or damage to an **aircraft** defined in the policy schedule (Insured **Aircraft**); and

2. any sums which the **Insured** shall become legally liable to pay, and (if so required by the Policy) shall pay (including costs awarded against the **Insured**) in respect of:

  (a) accidental **bodily injury** (fatal or otherwise) to **passengers** directly caused by an accident to an insured **aircraft**; and/or
  (b) loss of or damage to baggage and personal articles of **passengers**, mail and cargo directly caused by an accident to an insured **aircraft**; and/or
  (c) accidental **bodily injury** (fatal or otherwise) and accidental damage to property directly caused by an insured **aircraft** or by any person or object falling therefrom.

PROVIDED THAT:

1.  Coverage provided pursuant to this endorsement shall be subject to all terms, conditions, limitations, warranties, exclusions and cancellation provisions of this Policy (except as specifically provided herein), and nothing in this endorsement extends coverage beyond that which is provided by the Policy.

2.  Nothing in this endorsement shall provide any coverage in respect of grounding and/or loss of use of any aircraft which has not been physically damaged or destroyed in the accident giving rise to a claim under the Policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____April 15, 2016_____ to be attached to and hereby made a part of
Policy No. ___LP 006364456-01___ issued to ___PETER H. HEINS_____

By ___COMMERCE AND INDUSTRY INSURANCE COMPANY_____

Endorsement No. _____10_____

Date of Issue _____April 18, 2016_____                By _____
                                                                                  (Authorized Representative)

71223 (6/99)                    Page 2

## SANCTIONS AND EMBARGO CLAUSE - AVN111

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  If, by virtue of any law or regulation which is applicable to an Insurer at the inception of this policy or becomes applicable at any time thereafter, providing coverage to the "Insured" is or would be unlawful because it breaches an embargo or sanction, that Insurer shall provide no coverage and have no liability whatsoever nor provide any defence to the "Insured" or make any payment of defence costs or provide any form of security on behalf of the "Insured", to the extent that it would be in breach of such law or regulation.

2.  In circumstances where it is lawful for an Insurer to provide coverage under the policy, but the payment of a valid and otherwise collectible claim may breach an embargo or sanction, then the Insurer will take all reasonable measures to obtain the necessary authorization to make such payment.

3.  In the event of any law or regulation becoming applicable during the policy period which will restrict the ability of an Insurer to provide coverage as specified in paragraph 1, then both the "Insured" and the Insurer shall have the right to cancel its participation of this policy in accordance with the laws and regulations applicable to the policy provided that in respect of cancellation by the Insurer a minimum of (30) days notice in writing be given.  In the event of cancellation by either the "Insured" or the Insurer, the Insurer shall retain the pro rata proportion of the premium for the period that the policy has been in force. However, in the event that the incurred claims at the effective date of cancellation exceed the earned or pro rata premium (as applicable) due to the Insurer, and in the absence of a more specific provision in the policy relating to the return of premium, any return premium shall be subject to mutual agreement. Notice of cancellation by the Insurer shall be effective even though the Insurer makes no payment or tender of return premium.

For the purpose of this endorsement Insurer shall mean the Company.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of
Policy No. _ LP 006364456-01 _ issued to _ PETER H. HEINS _

By _ COMMERCE AND INDUSTRY INSURANCE COMPANY _

Endorsement No. _____ 11 _____

Date of Issue _____ April 18, 2016 _____ By _____
                                              (Authorized Representative)

UE1437 (06/14)

# OHIO CANCELLATION / NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company that issued this policy; and 2) "you", "your", or "Insured" means the Named Corporation, Named Organization, Named Entity, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term state in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is understood and agreed that the cancellation provision of the policy is deleted in its entirety and replaced by the following:

CANCELLATION

This policy may be cancelled by the Named Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

For coverage that has been in effect for ninety (90) days or less the policy may be cancelled by the Insurer by mailing or delivering to the Named Insured written notice of cancellation at least:

a)  10 days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

b)  30 days before the effective date of cancellation if the Insurer cancels for any other reason.

After coverage has been in effect for more than ninety (90) days or after the effective date of the renewal of the policy, a notice of cancellation shall not be issued by the Insurer unless it is based on at least one of the following reasons:

a)  Nonpayment of premium;

b)  Discovery of fraud or material misrepresentation in the procurement of the insurance;

c)  Discovery of willful or reckless acts or omissions on the part of the Named Insured or Other Insured(s) which increase any hazard insured against;

d)  The occurrence of a change in the individual risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed, except to the extent the insurer reasonably should have foreseen the change or contemplated the risk in writing the contract;

e)  Loss of or substantial decrease in applicable reinsurance (if the superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage);

f)  Failure of an Insured or Other Insured(s) to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

g)  A determination by the director of insurance that the continuation of the policy would create a condition that would be hazardous to the Insured or Other Insured(s) or to the public.

The notice of cancellation will be in writing, be mailed to the Insured at the last known address, and contain all of the following:

- The policy number;

- The date of notice;

- The effective date of cancellation (Except for nonpayment of premium, the effective date of cancellation shall not be less than thirty (30) days from the date of mailing the notice. When cancellation is for nonpayment of premium, the effective date of cancellation will be no less than ten (10) days from the date of mailing the notice); and

- An explanation of the reason for cancellation.

In addition, the policy is amended to include the following:

NONRENEWAL

The Insurer shall provide at least thirty (30) days written notice of its intention not to renew the policy at its expiration date. The notice will contain the date of notice, the policy number and will state the expiration date of the policy.

NOTICE REQUIREMENTS FOR INCREASE IN PREMIUM

An insurer who intends to condition renewal upon a substantial increase in premium shall mail a notice of such intention to the agent of record and to the Insured at least thirty (30) days prior to the expiration date of the policy. If the notice is mailed less than thirty (30) days before the expiration date of the policy the Insured's coverage then in effect remains in effect until thirty (30) days after the date of mailing the notice.

OTHER DUTIES OF THE INSURER (APPLICABLE TO CLAIMS-MADE POLICIES ONLY)

The Insurer will provide the Insured the following information relating to this and any preceding claims-made policy issued to the Insured by the Insurer during the previous three years:

1. A list or other record of each claim, not previously reported to any other insurer, of which the Insurer has been notified in accordance with the policy terms and conditions. The Insurer will include the date and brief description of each claim if that information was in the notice the Insurer received.

2. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit.

    Amounts reserved are based on the Insurer's judgment. They are subject to change and should not be regarded as ultimate settlement values.

    The Insured (or Other Insured(s)) must not disclose this information to any claimant or any claimant's representative without the Insurer's consent.

If the Insurer cancels or elects not to renew this policy, the above information shall be provided no later than (30) thirty days before the date of policy termination. In other circumstances, the Insurer will provide this information only if the Insurer receives a written request from the Insured within sixty (60) days after the end of the policy period. In this case, the Insurer will provide this information within forty-five (45) days of receipt of the request.

The Insurer compiles claim information for its own business purposes and exercises reasonable care in doing so. In providing this information to the Insured, the Insurer makes no representations or warranties to the Insured, any Other Insureds, insurers, or others to whom this information is furnished by or on behalf of the Insured. Cancellation or non-renewal will be effective even if the Insurer inadvertently provides inaccurate information.

RETURN OF UNEARNED PREMIUM

If the total premium has been paid and the policy is cancelled by the Insured at any time during the policy period, the Insurer may retain the premium at customary short rates for the time the policy has been in force and return to the Insured ninety percent (90%) of the unearned portion of the premium calculated on a pro rata basis.

If the premium is paid in installments and the policy is cancelled by the Insured at any time during the policy period, the Insurer may collect premium at customary short rates for the time the policy has been in force, said rates to be computed on the full term of insurance mentioned in the policy as charged by the Insurer.  Upon receipt of such short rates, the Insurer will return all installment notes then unpaid and return to the Insured any premium collected in excess of the short rates.

If this policy is cancelled by the Insurer at any time during the policy period, the Insurer may retain the pro rata portion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition of cancellation, but such payment shall be made as soon as practicable.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ April 15, 2016 _____ to be attached to and hereby made a part of Policy No. __LP 006364456-01__ issued to __PETER H. HEINS__

By __COMMERCE AND INDUSTRY INSURANCE COMPANY__

Endorsement No. _____12_____

Date of Issue _____April 18, 2016_____          By _____
97531                                                                    (Authorized Representative)
SE52162 (05/14)                    Page 3

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

AV1013 (04/13)

**COMMERCE AND INDUSTRY INSURANCE COMPANY**
**(Herein called the Company)**
**175 WATER STREET, 18TH FLOOR**
**NEW YORK, NY 10038**

**AIRCRAFT POLICY**
**TABLE OF CONTENTS**

**AIRCRAFT POLICY TABLE OF CONTENTS**

|  | Page ONE |
|---|---|
| Coverage Summary | 4 |
| Insuring Agreements | |
| Liability Coverage | 4 |
| Medical Expense | 4 |
| Physical Damage | 4 |
| Non-Owned Aircraft | 4 |
| Defense and Settlements | 4 |
| Supplementary Payments | 4 |
| Policy Period & Policy Territory | 5 |
| Exclusions | 5 & 6 |
| Limits of Liability | 6 & 7 |
| Conditions | |
| Two or more Aircraft | 7 |
| Notice of Claim, Occurrence, Suit or Loss and Your Duties | 7 |
| Loss to Your Aircraft | 8 |
| Our Settlement Options | 8 |
| Repairs by You | 8 |
| Appraisal of Loss | 8 |
| Our Rights of Recovery | 8 |
| Payment of Claims and Suit Against Us | 8 |
| Deductible | 8 |
| Transfer of This Policy to Others | 8 |
| Cancellation | 9 |
| Policy Conforms to Law | 9 |
| Financial Responsibility | 9 |
| Fraud or Misrepresentation | 9 |
| US. Navy, Army and Air Force Certificates | 9 |
| Changing the Policy | 9 |

Definition Words

| | |
|---|---|
| Agreed Value | 9 |
| Aircraft | 9 |
| Aviation Managers | 10 |
| Bodily Injury | 10 |
| Disappearance | 10 |
| FAA | 10 |
| Flight | 10 |
| Insured | 10 |
| Loss | 10 |
| Medical Expense | 11 |
| Non-Commercial Use | 11 |
| Non-Owned Aircraft | 11 |
| Not-In-Flight | 11 |
| Not-In-Motion | 11 |
| Occurrence | 11 |
| Passenger | 11 |
| Personal Effects | 11 |
| Physical Damage | 11 |
| Policy Territory | 11 |
| Property Damage | 11 |
| Related Claims | 11 |
| Total Loss | 11 |
| We, Us, Our, and the Company | 11 |
| You and Your | 12 |
| Your Spouse | 12 |

---

## MEXICO WARNING STATEMENT

If you have an occurrence in Mexico and you have not purchased aircraft liability insurance for that aircraft from a Mexican insurance company, you and your passengers may be jailed and that aircraft taken from you by the Mexican authorities.

We are not a Mexican insurance company. Contact your Producer for information on this coverage.

                          © American International Group, Inc. All Rights Reserved.

# AIRCRAFT INSURANCE POLICY PROVISIONS

## PART ONE
## INSURING AGREEMENTS

Subject to the policy Limits of Liability, Exclusions, Conditions, Definitions and approved Endorsements, **we** agree to provide **you** the following insurance in return for **your** premium payment. **Our** agreement to provide coverage and the premium amount are based on the statements in **your** application being true. This policy is the only agreement between **you** and **us** relating to the subject of this insurance.

1.  LIABILITY INSURANCE FOR YOUR AIRCRAFT
    COVERAGE A - **Bodily Injury** and **Property Damage** Liability Insurance
    **We** will pay for **bodily injury** and **property damage** for which an **insured** is legally liable, caused by an **occurrence** arising from the ownership, maintenance or use of **your aircraft.**

2.  INSURANCE FOR MEDICAL EXPENSES
    COVERAGE B - **Medical Expenses** Coverage
    **We** will pay for necessary **medical expenses** incurred within one year of an insured **occurrence** for **bodily injury** to **passengers** including crew.

3.  INSURANCE FOR PHYSICAL DAMAGE TO YOUR AIRCRAFT
    COVERAGE C - **Aircraft Physical Damage**
    **We** will pay for physical damage to **your aircraft.**

4.  LIABILITY INSURANCE FOR YOUR USE OF NON-OWNED AIRCRAFT
    Coverages A & B will apply (if insured) to **your** legal liability arising out of:
    a)  temporary use by **you** of a substitute **non-owned aircraft** if **your aircraft** is not usable due to its breakdown, repair, servicing, or **loss;**
    b)  use of **non-owned aircraft** by **you** but only if **you** are one individual or one individual and **your spouse.**
    The coverages under this Insuring Agreement 4 only apply as excess over other insurance available to **you.**

5.  DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS AND SUITS
    **We** have the right and duty to defend, investigate and settle any claim or suit against an **insured** covered by this insurance as **we** judge proper. But, when the applicable Limit of Liability has been exhausted by payment of judgments or settlements, **we** then are not obligated to pay any claim or judgment, or to provide any defense or pay any expenses. **We** have no obligation to defend, pay any expense, investigate or settle any claim or suit not covered in this policy.

6.  SUPPLEMENTARY PAYMENTS
    While **we** are obligated per Insuring Agreement 5 to defend a covered claim under Coverage A, **we** will also pay in addition to the applicable limit:
    a)  reasonable expenses incurred at **our** request, but not loss of earnings, or wages or salaries of **your** employees;
    b)  interest earned on the amount of a judgment which is covered by this policy that does not exceed the applicable Limit of Liability. Interest is earned until **we** pay or offer to pay **our** part of the judgment to which this insurance applies;
    c)  premiums on bonds to release attachments and to appeal judgments we elect to appeal, and on bail bonds due to **your** violation of a law or regulation in connection with a covered **occurrence**, but not for more than $500 each bail bond. But, **we** are not obligated to apply for or to provide these bonds;
    d)  **your** costs for necessary first aid to others at a covered **occurrence**;
        up to $10,000. each occurrence for:
    e)  i)  runway or aircraft foaming for minimizing **loss** under this policy;

      ii)    search and rescue operations performed by or at your request, but only after all government and military search and rescue operations have been discontinued.

7.   **POLICY PERIOD AND POLICY TERRITORY**
This policy only covers **occurrences** and **physical damage** happening within the Policy Period and **Policy Territory.**

---

## PART TWO
## EXCLUSIONS

This insurance does not apply:

1.   under any coverage
    a)   to an **occurrence**, loss or damages which an **insured** intends or expects, unless necessary to prevent dangerous interference with aircraft operation;
    b)   to any liability an **insured** assumes, except, under Coverage A, written agreements with governmental or military authorities necessary to use an airport;
    c)   when the aircraft is in flight:
       i)   with **your** knowledge and consent for either an unlawful purpose or for other than the Approved Use;
       ii)   when a special permit or waiver is required by the FAA;
       iii)  if piloted by anyone other than:
          (1)  a pilot specified in Item 5;
          (2)  a pilot employed by an **FAA** approved repair station while the **aircraft** is in their care, custody or control for the purpose of maintenance, repair or test **flight**;
    d)   if **you** know the aircraft is not certificated by the **FAA** under a Standard Airworthiness Certificate in full force and effect, while in **flight**;
    e)   to claims directly or indirectly occasioned by, happening through, or in consequence of:
       i)   noise (whether or not audible to the human ear), vibration, sonic boom or any associated phenomena;
       ii)   pollution or contamination of any kind;
       iii)  electrical and electromagnetic interference;
       iv)  interference with the use of property;
       unless caused by a crash or collision of the aircraft or a recorded in **flight** emergency causing abnormal aircraft operation;
    f)   to any liability that could be or is covered under a nuclear energy liability insurance policy, even if its limits have been used up;
    g)   to any claim directly or indirectly caused or contributed to by or arising from ionizing radiations or contaminations by radioactivity from any source whatsoever;
    h)   if the aircraft is being used for or in connection with:
       i)   aerial advertising, towing, photography, or application of any substance;
       ii)   hunting, herding or spotting of animals of any kind, including birds and fish;
       iii)  patrol or surveillance of any kind, including powerlines, pipelines, traffic or fires;
       iv)  flight instruction to anyone other than the pilots listed by name in Item 5 on Page One;
       v)   skydiving or parachuting;
       vi)  closed course racing;
       vii) flights off-shore in support of an off-shore business or operation;
       viii) external transportation of persons or property, including wire stringing, or construction;
2.   to any claim **you**, **your** survivors or **your** estate makes for bodily injury or death to **you**;
3.   in flight, if piloted by a Student Pilot:
    i)   when there is a passenger in **your** aircraft unless that passenger is a Certified Flight Instructor teaching the Student Pilot; or
    ii)   when the Student Pilot is not under the direct supervision of a Certified Flight Instructor for the **flight** involved;

4.  to **bodily injury** to any employee injured while at work for **you** (but excluding liability for this assumed in a written agreement with a military or governmental authority for use of an airport), or to claims by that employee's spouse, child, parent, brother or sister in consequence thereof;

5.  to any claim an **insured** or any insurer may be held liable for by way of indemnity or otherwise under any Worker's Compensation, occupational, disease, unemployment or disability benefits law, or any similar law;

6.  to property **damage** to property transported, owned or used by, or in the care, custody or control of an insured. But, **we** will pay:
    a)  up to $1,000. for loss to each **passenger's** personal effects, subject to an **occurrence** limit equal to $1,000. multiplied by the total number of seats for the aircraft involved;
    b)  up to $10,000. each occurrence for property **damage** to a hangar **you** rent, and its contents you do not own;

7.  under Coverage C:
    a)  to depreciation, or damages for loss of use;
    b)  unless all owners, financial interests, liens, encumbrances and obligations in **your aircraft** are shown in this policy;
    c)  to claims made by anyone but **you** or the lienholder;
    d)  to loss due to repossession, embezzlement, conversion, secretion or taking by anyone claiming a lawful right of possession, nor for any loss or damage during or resulting therefrom;
    e)  to **loss** due and confined to wear, tear, deterioration, freezing, mechanical, structural, hydraulic, pneumatic, or electrical failure or malfunction. Wear, tear, deterioration, freezing, mechanical, structural, hydraulic, pneumatic, or electrical failure or malfunction of any engine, component, accessory, equipment or system is considered a failure or malfunction of the entire engine, component, accessory, equipment or system;
    f)  to tires unless as a direct result of other insured loss to the aircraft;
    g)  to claims for disappearance in **flight** unless **your aircraft** is insured while in **flight**;
    h)  to claims arising from war, whether declared or not, invasion, rebellion, riot, revolution, insurrection or warlike operation;
    i)  to claims arising from capture, seizure, arrest, restraint or detention or the consequences thereof or any attempt thereat, or any taking of **your aircraft** or damage to or destruction thereof by any governmental authority or agent (whether secret or not) for any military, naval or usurped power, whether any of the foregoing be done by way of requisition or otherwise and whether in time of peace or war and whether lawful or unlawful;
    j)  to loss to aircraft engines and auxiliary power units caused by heat or temperature change from the operation, attempted operation or shutdown of the aircraft engine or auxiliary power unit unless resulting directly from other loss covered by this policy.

8.  Under Insuring Agreement 4 to claims for damage to, loss of, or depreciation or loss of use of the non-owned aircraft or any property in it except as noted in Exclusion 6. above.

## PART THREE
## LIMITS OF THE COMPANY'S LIABILITY

Only the coverages that you have purchased and for which a premium is shown on Page One are provided by this policy.

OTHER INSURANCE

If other insurance is available covering loss, expense or liability that is also covered by this policy then **we** will not be liable for more than the percent that the applicable Limit of this policy bears to the total of all the available Limits. But if other primary insurance was issued to you through any of the **Aviation Managers** then the Limits of this policy are reduced by the amount of the applicable Limits of that other insurance.

1.  This does not apply to insurance you bought as excess over this policy.
2.  Coverage in Insuring Agreement 4 is excess over any available insurance.

**COVERAGE A** - The Limits apply separately to each insured aircraft and to each insured. But in any one occurrence, the number of other aircraft, or insureds, claims or claimants does not increase or change the Limits beyond the "Each Occurrence" Limit shown in Item 3 on Page One, which applies as follows:

1. The Limit shown for "Each Passenger" is the most we will pay for damages arising out of bodily injury or death to or of each passenger, including all related claims, no matter how many separate claims may be involved, subject to a passenger bodily injury occurrence limit equal to the "each passenger" limit multiplied by the total number of seats for the aircraft involved;

2. The Limit for "Each Occurrence" is the most we will pay for all damages arising out of bodily injury or death including passengers and property damage combined in one occurrence, including all related claims, no matter how many separate claims are involved.

All bodily injury and property damage arising out of continuous or repeated exposure to the same general conditions shall be deemed to be one occurrence.

**COVERAGE B - MEDICAL EXPENSES**
We will not pay more than the applicable Limit shown in Item 3 on Page One for medical expenses for "each passenger" (including crew) in any one occurrence, who has sustained bodily injury.

**COVERAGE C** - The most we will pay for physical damage to your aircraft is the lesser of:

1. its Agreed Value if it is a total loss; or,

2. the costs to repair or replace damage with materials of like kind and quality; including the lowest cost of shipping parts of the aircraft for repair and return the aircraft to the occurrence site or home base, whichever is closer, but minus any previous unrepaired damage. We will not pay more to repair your aircraft than we are required to pay under a total loss (Agreed Value less salvage value).

---

## PART FOUR
## CONDITIONS OF INSURANCE

1. **TWO OR MORE AIRCRAFT**
   When two or more aircraft are insured under this policy, the terms of this policy shall apply separately to each insured aircraft.

2. **NOTICE OF CLAIM, OCCURRENCE, SUIT OR LOSS, AND AN INSURED'S DUTIES.**
   In the event of a claim, occurrence, suit, or loss, all insureds agree to:
   a) not assume any obligation or liability, offer or pay any reward except at their expense, or make any payment except for necessary first aid to others or to protect the aircraft per g) below;
   b) promptly contact the nearest Aviation Managers and provide prompt written notice at the address appearing on the back of the policy cover, including the:
      i) time, place and description of events;
      ii) names and locations of passengers, injured, deceased and witnesses;
      iii) description and locations of property damage and loss to your aircraft;
   c) cooperate with and assist us in all matters of the claim or suit and promptly send all suits and legal papers to the nearest Aviation Managers;
   d) submit to a sworn statement under oath by a person designated by the Aviation Managers;
   e) do nothing after an occurrence or loss to harm our rights of recovery against any person or organization;
   f) authorize us to obtain medical and other records;
   g) not abandon your aircraft;
   h) take all reasonable precautions to protect your aircraft after an occurrence. We will reimburse you for your costs if they are reasonable;
   i) promptly report theft and vandalism to us and local police;
   j) allow us to inspect your aircraft's damage before any repairs or disposal;
   k) file a written Proof of Loss with us within 60 days after the loss to your aircraft unless we give you more time in writing;

l)    give **us** clear title to the salvage when we pay **you** for the **aircraft;**

m)   allow **us** to inspect **your aircraft**, its records, repair and service invoices and sales receipts; and **your** pilot log books during the Policy Period, and until settlement of the claim, suit or loss.

3. **LOSS TO YOUR AIRCRAFT**

   a)   **OUR** SETTLEMENT OPTIONS

       On a covered **loss**, other than a total loss, to your aircraft, we can:

      i)    pay **you,** or

      ii)   repair or replace damage with parts of like kind and quality;

      iii)  return missing property when found with payment for unrepaired **physical damage** any time before we pay for the **loss.**

   b)   REPAIRS BY **YOU**

       On a covered **loss**, other than a total loss, if **you** repair **your aircraft**, we will not pay more than:

      i)    the actual cost to **you** of parts of like kind and quality;

      ii)   the current straight time rate for labor **you** hire;

      iii)  not more than 100% of b) ii) above **you** incur for overhead and supervision.

4. **APPRAISAL OF LOSS**

   If **you** disagree with us on the amount of **loss** to **your aircraft**, each of us upon written notice to the other, will hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in 15 days, a Judge of the county of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of the **loss. You** and we will share the umpire's cost equally. But this clause shall not deprive **us** of any of **our** rights.

5. **OUR** RIGHTS OF RECOVERY

   **You** agree that when we pay a claim we then assume all **your** rights of recovery. That person must do all that is needed to help **us** recover.

6. PAYMENT OF CLAIMS AND SUIT AGAINST **US**

   **You** agree to comply with all the terms of this policy before we have to pay or before **you** can sue **us**. But we do not have to pay nor can **you** sue **us** for:

   a)   **loss** to **your aircraft**, or for **medical expenses** until the amount of **loss** and the amount of **medical expenses** are determined, and not until 30 days after **you** file written Proof of **Loss** with us. Payments we make for **Medical Expenses** shall not constitute admission of any liability by an **insured, us** or the **Aviation Managers.**

   b)   **your** liability for **bodily injury** or **property damage** until the amount of **your** legal liability has been determined or by our written agreement with the claimant.

   This policy will not cover a suit against us for **loss** or **medical expenses** instituted more than one year after the **occurrence.**

   Our obligations are not reduced if **you** or **your** estate is legally declared bankrupt or insolvent.

7. DEDUCTIBLE

   **You** must first pay the applicable Deductible amount in the event of **loss** to **your aircraft.**

8. TRANSFER OF THIS POLICY TO OTHERS

   Interest in this policy cannot be transferred without **our** prior written agreement. But if **you** die, or are adjudged legally bankrupt or insolvent and **you** or **your** representative notifies us within 60 days of such judgment, the Policy will cover:

   a)   as an **insured** anyone having custody of **your aircraft** until **your** legal agent is appointed, or

   b)   **your** legal agent, as having the same rights and duties under the policy as **you** but only while in the course of his official duties as such.

9. CANCELLATION

You must notify the **Aviation Managers** in writing what date in the future to cancel. **Your** refund will be figured on the customary Short Rate Table in effect in **your** State. **We** or the **Aviation Managers** must notify **you** in writing at the address in Item 1 on Page One at least 30 days before the date of cancellation. But only 10 days written notice is provided for cancellation due to non-payment of premium. Proof of mailing is proof **you** were notified. When **we** or the **Aviation Managers** cancel, all unearned premium will be returned.

Receipt of **your** premium after **we** have mailed notice of cancellation will not automatically reinstate this policy or have the effect of overriding **our** cancellation.

**We** shall not be liable for any return **physical damage** premium with respect to an **aircraft** on which a total **loss** has been paid.

10. POLICY CONFORMS TO LAW

The terms of this policy are amended to conform to the laws of **your** State shown in Item 1 on Page One.

11. FINANCIAL RESPONSIBILITY

If this policy is certified as proof of insurance under any government financial responsibility law applicable to aircraft, **we** may pay up to the minimum amounts required by that law, but only within the scope of coverage and limits of liability otherwise provided by this policy. **You** agree to promptly reimburse **us** for any amounts that **we** would not have to pay if not for this clause.

12. FRAUD OR MISREPRESENTATION

This policy will be void from its Inception Date in case of any fraud, attempted fraud, false swearing or misrepresentation of any material fact or circumstance by **you** as to anything about this insurance.

13. U.S. NAVY, ARMY, AND AIR FORCE CERTIFICATES

If **we** issue a certificate of insurance required under U.S. Navy OPNAV Form 3770, U.S. Army Regulation 95-15, or U.S. Air Force Regulation 55-20, or replacements thereto, the insurance required by such regulation is automatically covered in this policy.

14. CHANGING THE POLICY

The terms of this insurance cannot be changed or waived except by **our** written endorsement to this policy signed by the **Aviation Managers**.

---

PART FIVE
## DEFINITION WORDS

These words have the following meanings when they appear in **bold** type.

"Agreed Value" means:
1. with respect to **your aircraft** shown in Item 3 on Page One, the amount shown as its agreed **value**, plus the amount **you** have actually paid, up to 30% of the agreed value, for additional equipment and modification of **your aircraft** after the effective date of coverage for this **aircraft**, provided **you** tell **us** in writing within 30 days of the additions and modifications and pay the additional premium for them when due;
2. with respect to another **aircraft you** buy or lease for more than 30 days, during the Policy Period, its market **value**, unless **we** agree otherwise in writing.

"Aircraft" means:
1. the aircraft specified in Item 3 on Page One; and
2. another **aircraft you** buy, or lease for more than 30 days, during the Policy Period, but only if:
   a) **you** tell **us** in writing within 30 days of its acquisition and pay the premium for it when due; and
   b) **we** insure all **aircraft you** own, or lease in whole or in part for more than 30 days; and
   c) it has a Standard Airworthiness Certificate issued by the **FAA**, which is in full force and effect.

Included is the engine, all avionics and operating equipment attached or temporarily detached and not replaced on the aircraft, and tools and repair equipment specifically designed for this type aircraft. Portable equipment, not specifically designed for **your** make and model **aircraft**, including but not limited to headsets, electronic devices and oxygen systems, are not considered to be part of the **aircraft**.

3. the **non-owned aircraft** used by **you**.

**Non-owned aircraft** means an aircraft not owned or registered in whole or in part or encumbered by **you** and that is not used by **you** for more than 30 days. But this 30 day limit does not apply to substitute **non-owned aircraft** covered in Insuring Agreement 4.a). Aircraft encumbered by an **insured**, or which an **insured** rents to or leases to others or finances for others, or any such aircraft repossessed or reacquired by an **insured** is not an **insured non-owned aircraft**.

Items 2. and 3. of this definition are limited to aircraft which:

i) must not be in **flight**, unless operated by a pilot who has an appropriate FAA pilot's certificate for the make and model being flown;

ii) must not have more engines or a different type of engine (piston or turbine) or more horsepower than the **aircraft** described in Item 3 on Page One, or not more than a single engine up to 300 horsepower, whichever is greater;

iii) must not have more total seats than the **aircraft** described in Item 3 on Page One, or not more than 6 total seats, whichever is greater;

iv) must not be a seaplane, unless the **aircraft** described in Item 3 on Page One is a seaplane;

v) must not have a pressurized cabin, unless the **aircraft** described in Item 3 on Page One has a pressurized cabin;

vi) must not be a rotorcraft, unless the **aircraft** described in Item 3 on Page One is a rotorcraft.

"Aviation Managers" means AIG Aerospace Insurance Services, Inc., or any of its subsidiary or affiliated companies, branch offices or authorized representatives.

"Bodily Injury" means physical injury, sickness, disease, and if arising out of the foregoing, mental anguish, or death of a person including damages for care and loss of services, caused by an **occurrence**.

"Disappearance" means **your aircraft** is missing in **flight** and has not been found within 60 days after such **flight** began within the policy period and **policy territory**.

"FAA" means the Federal Aviation Administration, which has jurisdiction over civil aviation in the United States of America; or, its foreign equivalent.

"Flight" means with respect to fixed wing **aircraft** from the start of the takeoff run until the end of the landing run, but excluding taxiing and with respect to an **aircraft** that is a rotorcraft from the time the rotors start to rotate under power for the purpose of flight until they subsequently cease to rotate.

"Insured" means, with respect to Liability Coverages:

1. **you**; and

2. persons or organizations while using, riding in or legally responsible for the use of the aircraft if with **your** permission.

But excluded as an insured is any:

a) student pilots; unless listed by name as pilot in Item 5 on Page One;

b) person or organization renting **your** aircraft;

c) person or organization other than **you**, or **your** employees or agents while at work for **you** who design, make, modify, repair, service, maintain, rent, sell, finance, lease or charter aircraft, aircraft engines, parts or accessories, own or operate a flying school, provide **flight** instruction, own or operate an airport, hangar or aircraft tiedowns, if the claim arises out of such activity by such person or organization;

d) employee who injures a co-employee;

e) owner or lessor (or their employee or agent) of the aircraft to which Insuring Agreement 4 applies.

"Loss" means physical damage.

"Medical Expense" means expenses for necessary medical, surgical, x-ray or dental service, prosthetic devices, and necessary ambulance, hospital, professional nursing, and funeral services, but not monuments, headstones or burial places.

"Non-Commercial" use means private pleasure and business use, excluding any use for hire, money or any form of reward or compensation. Being reimbursed for or sharing the direct expenses of a flight if the sum of these expenses does not result in a profit to you or anyone is not excluded.

"Non-Owned Aircraft" refer to Aircraft.

"Not-in-Flight" means while the aircraft is on the ground, but excluding from the start of its take-off run until the end of its landing run.

"Not-in-Motion" means while the aircraft is not-in-flight, nor moving under its own power or momentum therefrom. With respect to an aircraft that is a rotorcraft, not-in-motion shall also mean whenever the rotors are not rotating.

"Occurrence" means a sudden event, unintended and unexpected by an insured, including continued or repeated exposure to the same conditions.

"Passenger" means a person while in, on, entering or getting out of the aircraft.

"Personal Effects" means handbags, suitcases, briefcases and similar items. Personal Effects does not include cameras, currency, documents, electronic devices, jewelry, passports, or tickets.

"Physical Damage" means direct and accidental physical loss of or damage to property (also called loss). Excluded are depreciation, or any damages for loss of use.

"Policy Territory" means within the political boundaries of the United States of America, Mexico, Central America, Canada, the Islands of the West Indies (excluding Cuba), and while enroute between places therein.

"Property Damage" means:
1.  physical injury or destruction to tangible property of others, including resultant loss of use thereof; or
2.  loss of use of tangible property of others that is not physically injured;
if caused by an occurrence.

"Related Claims" means all claims for care and loss of service, loss of society and consortium, mental anguish, emotional distress, loss of support, medical and funeral expenses, and any and all other damages from or related to bodily injury to any person or passenger. Notwithstanding anything to the contrary in the definition of bodily injury, the Company's liability and coverage for damages for both bodily injury and related claims are included and combined within the each person, each occurrence limits of liability specified in the Coverage Summary Page, as applicable, and there are no separate or additional Limits of Liability for related claims.

"Total Loss" means the cost of repairing the aircraft when added to its salvage value before repairs equals or exceeds its agreed value. Disappearance, or theft of the entire aircraft, is a total loss.

"We", "Us", "Our" and the "Company" means the company indicated on Page One.

"You" and "Your" means the person or organization named in Item 1 on Page One.

"Your Spouse" means a person to whom you are legally married.

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.

Secretary                                      President

COMMERCE AND INDUSTRY INSURANCE COMPANY

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer on the Declarations page of the Policy.

# AIG Property Casualty
# U.S. Privacy and Data Security Notice

**About This Notice**

This Privacy and Data Security Notice applies only to your Personal Information (see definition below) obtained by one of the property-casualty insurance company subsidiaries or affiliates of American International Group, Inc. listed at the end of this notice (collectively, the "AIG Companies" or "we") in connection with the products or services one of those companies provided primarily for your personal, family, or household purposes in connection with which you are receiving this notice.

The AIG Companies have established practices, procedures and system protections that are designed to help protect the privacy and security of Personal Information that we collect in the course of conducting our business. This notice outlines how we collect, handle, and disclose Personal Information about you.

The term "Personal Information," as used in this Privacy and Data Security Notice, means information that identifies you personally. Examples of Personal Information include, but are not limited to, a first and last name, a home or other physical address, an email address, a financial account or credit card number, a driver's license number, and information on your physical condition or health status.

**I. Information Privacy**

We may collect Personal Information from applications, enrollment forms, in claims processing, or in your other interactions with us and with our Affiliates. We may also collect Personal Information from credit reporting agencies and other third parties in connection with the sale of our products to you.

We will collect Personal Information only in accordance with applicable laws or regulations, whether we collect it in response to your request for a product or service from us or otherwise.

**Information Sharing**

We may share your Personal Information with Affiliates and Non-Affiliates as described below.

**With our Affiliates:**

Our Affiliates may include other insurance companies, insurance holding companies, insurance agents and agencies, claims administrators, marketing companies, e-commerce service providers, and companies providing administrative services.

We may share your Personal Information, including Personal Information of a health nature, with our Affiliates that assist us in servicing your insurance policies. Examples are administration (billing and collections), risk management, underwriting, and claims handling. We may also share your Personal Information with our Affiliates for the purpose of detecting and preventing fraud, as directed or authorized by you, or as otherwise permitted or required by law.

**With Non-Affiliates:**

We may share your Personal Information, including Personal Information of a health nature, with Non-Affiliates that assist us in servicing your insurance policies. Examples are administration (billing and collections), risk management, underwriting, and claims handling. We may also share your Personal Information with Non-Affiliates for the purpose of detecting and preventing fraud, as directed or authorized by you, or as otherwise permitted or required by law.

We may also enter into joint marketing agreements with Non-Affiliates to share your non-health Personal Information as permitted by law. These Non-Affiliates may include providers of financial products or services such as insurance companies, financial institutions, and securities firms.

Because we do not share Personal Information with either Affiliates or Non-Affiliates in any other way, there is no need for an opt-out process in our privacy procedures.

**For California and Vermont Residents:** If it becomes necessary to share your Personal Information with Non-Affiliates other than as specifically allowed by law, we will not do so without first obtaining your permission.

## II. Data Security

To help prevent unwarranted disclosure of your Personal Information and secure it from theft, we utilize secure computer networks. Access is restricted to those persons who have a business need to use your Personal Information to provide products or services to you. We also maintain physical, electronic, and procedural safeguards designed to protect your Personal Information in compliance with federal and state privacy and information security laws. Non-Affiliates that assist us in servicing insurance policies or who enter into joint marketing agreements with us are required to take measures to maintain the security of your Personal Information in compliance with federal and state privacy and information security laws.

## III. Maintaining Personal Information

We also maintain procedures to ensure that the Personal Information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. You may make this request in writing to (include your name, address and policy number):

**Chief Privacy Officer**
**AIG Property Casualty**
**175 Water Street 15th Floor New York, NY 10038**
**Fax: 212 458-7081**
**E-Mail: CIPrivacy@aig.com**

**Special Notice:** You can obtain access to any non-public Personal Information we have about you if you properly identify yourself and submit a written request to the address above describing the information you want to review. We will also tell you the identity, if recorded, of persons to whom we have disclosed your non-public Personal Information within the preceding two years.

**You may request that we correct, amend or delete information about you.** If we do so, we will notify organizations that provided us with that information and, at your request, persons who received that information from us within the preceding two years. If we cannot grant your request to correct, amend or delete the information, you may give us a written statement of the reasons you disagree, which we will place in your file and give to the same parties who would have been notified of the requested change.

**Our Customers Can Depend on Us**

We are committed to maintaining our trusted relationship with our Customers. We consider it our privilege to serve our Customers' insurance and financial needs and we value the trust they have placed in us. Our Customers' privacy is a top priority. We will continue to monitor our practices in order to protect that privacy and will comply with state privacy laws that require more restrictive practices than those set out in this notice.

**Important Information Concerning the Applicability and Future Changes to this Privacy and Data Security Notice**

We may change this Privacy and Data Security Notice from time to time, and if particular changes are required by law to be communicated to you, we will do so.

The AIG Companies include: American Home Assurance Company; AIG Assurance Company; AIG Property Casualty Company; AIG Specialty Insurance Company; Commerce and Industry Insurance Company; Granite State Insurance Company; Illinois National Insurance Co.; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; National Union Fire Insurance Company of Vermont; New Hampshire Insurance Company; The Insurance Company of the State of Pennsylvania; American International Life Assurance Company of New York; and American General Life Insurance Company of Delaware.

78052 (04/14)



**HEADQUARTERS OFFICE**
100 Colony Square
1175 Peachtree St. NE, Suite 1600
Atlanta, Georgia 30361-3251
Telephone: 404/249-1300 Facsimile: 855/669-6711
Toll Free: 800/523-5256

**ILLINOIS**
300 South Riverside Plaza, Suite 2100
Chicago, Illinois 60606-6613
Telephone: 312/881-3050 Facsimile: 888/773-9386

**TEXAS**
600 N. Pearl Street, Suite 400
Dallas, Texas 75201
Telephone: 214/758-8400 Facsimile: 214/758-8884

**CALIFORNIA**
777 S. Figueroa Street, 14th Floor
Los Angeles, CA 90017
Telephone: 213/689-2733 Facsimile: 213/689-1886

**NEW YORK**
Financial Square
32 Old Slip, 28th Floor
New York, NY 10005
Telephone: 646/857-2111 Facsimile: 646/857-2110

**ARIZONA**
2929 N. Central Avenue, 19th Floor
Phoenix, AZ 85012
Telephone: 602/468-8709 Facsimile: 855/669-6711
Toll Free: 800/377-8760

SE-105 (Rev 3/13)



AIG Aerospace
Adjustment Services, Inc.
500 W. Madison Street
Suite 3000
Chicago, Il 60661
www.aig.com


Russell W. Talbot
Regional Claims Manager
T 312-831-8062 (Direct)
F 866 291-4394 (Direct)
M 847-347-9595
russell.talbot@aig.com

September 22, 2016

Mr. Peter Heins
7111 Dull Road
Arcanum, OH  45304

| | RE: | Insured: | Peter H. Heins |
|---|---|---|---|
| | | Aircraft: | 1947 Piper PA-11 N4910M |
| | | Policy: | LP 006364456-01 |
| | | File: | 4997378150US (-001/-004) |
| | | D/L: | September 14, 2016 |

Dear Mr. Heins;

      This letter will confirm receipt of the above referenced loss received in this office Tuesday September 20, 2016.   It will also confirm our subsequent telephone conversation prompted by the receipt of the above reported loss.

Preliminary information received regarding this matter from your insurance broker, Aircraft Owners and Pilots Association (AOPA) states the incident aircraft (N4910M) was operated by Clay Heins at the time of the claimed loss.  A review of the pilot section of your LP006364456-01 policy (copy attached) does not confirm Clay Heins was a named pilot intended to be covered under the policy.  That same AOPA report further states the incident aircraft was operated without your permission.  During our telephone conversation, you stated N4910M had been stolen.

# EXHIBIT B



We have established a claim file in order to further investigate the circumstances surrounding this matter. I wish to advise you however that this claim file has been so established under a Reservation of Rights to fully investigate all circumstances surrounding this matter without prejudice to the policy for insurance coverage. Should the facts so indicate, this reservation of rights may lead to a denial of insurance coverage.

Attached please find a claim form I request you complete and return in as much detail as possible. Also attached is a separate memo asking for additional information to assist us in the investigation and evaluation of this matter. As you have stated this aircraft was stolen from your possession, in addition to the information requested in the attached memorandum, please forward a copy of the policy report filed with the appropriate local law enforcement agency that responded to the reported theft of N4910M. A copy of that police report will become part of the above claim file.

Thank you in advance for your anticipated cooperation with the forwarding of this requested information. Should you have any questions, please feel free to contact me.

Sincerely,

Russell W. Talbot
AIG Aerospace Adjustment Services
Claims – Chicago



AIG Aerospace
Adjustment Services, Inc.
500 W. Madison Street
Suite 3000
Chicago, Il 60661
www.aig.com

Russell W. Talbot
Regional Claims Manager
T 312-831-8062 (Direct)
F 866 221-4394 (Direct)
M 847-347-9595
russell.talbot@aig.com

January 24, 2017

Mr. Konrad Kuczak
Attorney at Law
130 West Second Street, Suite 1010
Dayton, OH 45402-1588

RE:     Insured: Peter Heins
        File: 4997378150US
        Date of Loss: 09/142016

Dear Mr. Kuczak;

        Thank you for forwarding the Summons and Complaint (as two separate electronic attachments to your e-mail correspondence dated January 9, 2017) as both relate to the above matter.

# EXHIBIT C



      As you are aware, a claim file was established September 22, 2016 under a reservation of rights to evaluate and respond to this matter as appropriate.  Although our evaluation continues, with the Summons and Complaint documents now in hand and reviewed, I am in a position to advise you, and you in turn our insured that AIG Aerospace will accept defense of this matter and retain defense counsel to represent our named insured Peter H. Heins under the terms of his aviation policy LP 006364456-01. Please note this acceptance and retention of defense counsel is specifically addressed and limited to the SIXTH Cause of Action of the received Complaint as that is the ONLY such allegation that names our policyholder Peter H. Heins.  Causes of Action ONE through FIVE name one Clayton M. Heins who is NOT a named pilot on the aforementioned policy, appears to not meet any of the stated pilot qualifications of that policy and did not appear to have permission to operate the incident aircraft (N4910M) on the September 14, 2016 loss date.  As such an administrator or duly appointed estate representative will have to make a determination as to how to proceed with the defense of the Estate of Clayton M. Heins.

      The defense counsel that we have hired to represent our insured Peter H. Heins will be in contact with you in a timely fashion to discuss this matter further.

      Thank you for forwarding the completed claim form received today and signed by named insured Peter H. Heins.  As reported in that claim form, the aircraft was removed from a double locked hangar contrary to the express instructions of our insured Peter H. Heins. Mr. Heins' claim form signature box also adds the explanation that the incident flight which resulted in the accident was made without his approval.  Both of these statements are consistent with Mr. Heins' verbal explanation of this matter that he provided during our October 11, 2016 meeting at his ranch and aircraft hangar in Arcanum, OH.

As such, is it the position of Mr. Peter H. Heins this aircraft (N4910M) was stolen?

Thank you for clarifying this point and for forwarding the Summons and Complaint documents as well as the competed AIG Aerospace claim form.

Very truly yours,

*Russell W. Talbot*

Russell W. Talbot
Assistant vice president - Claims



AIG Aerospace