# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| PETER H. HEINS, et al., | : | Case No. 3:17-cv-00110 |
| --- | --- | --- |
| Plaintiffs, | : | District Judge Walter H. Rice |
|  | : | Magistrate Judge Sharon L. Ovington |
| vs. | : |  |
| COMMERCE AND INDUSTRY INSURANC COMPANY, et al., | : |  |
| Defendants. | : |  |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

The facts in this case involve an airplane crash, the total destruction of the aircraft, the deaths of Clayton Michael Heins and Jacob Andrew Turner, and an aircraft insurance policy. Clayton's father, Peter H. Heins, owned the destroyed aircraft. After the crash, a dispute arose concerning insurance coverage, leading Peter H. Heins to file the present case in the Darke County, Ohio Court of Common Pleas. Defendants Commerce and Industry Insurance Company and AIG Aerospace Adjustment Services, Inc. removed the case to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332.

The parties do not dispute that the diversity-jurisdiction requirements are satisfied and that, consequently, removal of the case from state court was legally justified. Their dispute instead presents choice between alternatives: (1) whether this Court should

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

decline to exercise its discretionary declaratory-judgment jurisdiction and remand the case to state court—as Plaintiff[2] asks (Doc. #s 7, 15); or (2) whether this Court should exercise its discretionary declaratory-judgment jurisdiction and retain the case here—as Defendants ask (Doc. #11).

## II. Background

The airplane crash leading in the present case also generated a wrongful-death case filed by the Administrator of Jacob Turner's Estate in the Darke County Court of Common Pleas (the Turner case). Peter Heins is the defendant in the Turner case both individually and as Administrator of his son Clayton's Estate. (Doc. #7, Exh. A). It appears that the Turner case remains presently pending in Darke County.

Returning to the instant case, Plaintiff Heins purchased an aircraft insurance policy from Defendant Commerce and Industry Insurance. His purchase occurred before the airplane crash happened. The subject of the insurance policy was the aircraft destroyed in the crash. The insurance policy was in effect at the time of the crash. *See* Doc. #9, *PageID* #s 172-73. Plaintiff Heins asserts in his Complaint that the insurance policy provided coverage for property damage to the aircraft and other losses. He further alleges that the policy required Commerce and Industry Insurance to "'…defend and settle any suit or claim covered by this insurance….'" (Doc. #3, *PageID* #69, ¶5) (quoting, apparently, the aircraft insurance policy).

---

[2] For simplicity sake, Plaintiff Peter Heins is referred to herein in the singular "Plaintiff Heins" even though he brings claims on behalf of himself, individually, and as Administrator of Clayton Michael Heins's Estate.

After the crash occurred, Plaintiff Heins asked Commerce and Industry Insurance to "provide Plaintiff (individually) with a defense to any and all claims which might be asserted by the next of kin, survivors, or estate of Mr. Jake Turner…." *Id*. at ¶7. In September 2016, AIG Aerospace (as Commerce and Industry Insurance's agent) wrote a letter informing Plaintiff Heins that it planned to investigate the circumstances surrounding the crash. *Id*., *PageID* at ¶9; *see* Exh. B.

A few months later, in January 2017, the Turner case was filed in the Darke County Court of Common Pleas. The Turner Complaint alleges that Clayton was the pilot of the aircraft involved in the crash and that Jacob was the passenger. It further alleges Clayton "possessed only a student pilot certificate and was not a licensed, qualified pilot." (Doc. #7, Exh. A, *PageID* #142, ¶14). The Sixth Cause of Action in the Turner Complaint asserts that Peter H. Heins negligently and recklessly entrusted Clayton with the aircraft, or permitted him to access the aircraft, "which conduct directly and proximately caused the aircraft to crash … resulting in personal injuries and death to Jacob Andrew Turner." *Id.* at ¶s 45-46.

Facing potential individual liability in the Turner case, Plaintiff Heins might have been somewhat relieved when Commerce and Industry Insurance informed him (on January 24, 2017) that AIG would "accept defense of the matter and retain defense counsel to represent … [him] under the terms of the …" aircraft insurance policy. (Doc. #3, *PageID* #70, ¶12). The representation was limited to the Sixth Cause of Action in the Turner Complaint. *Id*. He might have been further relieved when Commerce and

Industry Insurance's counsel soon filed an Answer on his behalf contesting the allegations in the Turner Complaint's Sixth Cause of Action. *Id*. at ¶13.

Whatever relief Plaintiff Heins might have felt was fleeting because Commerce and Industry Insurance soon changed its mind. It notified "Plaintiff (individually) that it was rejecting the claim of physical damage to the aircraft; it was not providing coverage for the bodily injury and death of Jacob Turner; and, it was not providing Plaintiff (individually) with a defense in to the claim against him made [in the Turner case]." *Id*. at ¶14. In response, Plaintiff Heins filed the present case in the Darke County Court of Common Pleas and, as noted above, removal to this Court followed.

He seeks a permanent injunction requiring Commerce and Industry Insurance to provide him with a defense to the Sixth Cause of Action in the Turner case or, alternatively, to reimburse him for the reasonable costs of attorney fees and expenses incurred in the Turner case. He further seeks to recover the maximum monetary amounts available under the aircraft insurance policy for indemnification, damages related to the destroyed aircraft, and punitive damages.

Plaintiff Heins's Complaint is notably silent on the Declaratory Judgment Act. Claim One asserts theories of waiver and estoppel against Commerce and Industry Insurance. He ties these theories to the allegations that Commerce and Industry Insurance initially reserved its right to investigate, obtained counsel to represent him, filed an Answer in the Turner case but declined (shortly thereafter) to provide him with coverage in connection with the Turner case. Claim Two relies on these same allegations

and asserts that Commerce and Industry Insurance denied coverage under the aircraft insurance policy in bad faith.

Plaintiff Heins's Third Claim alleges, "Under the terms of The Policy, The Company is required to defend and pay the claims alleged in the [Turner case]." *Id.*, *PageID* #72, ¶20. Claim Four frames additional theories of estoppel and bad faith as follows:

> Because The Aircraft had been the object of a wrongful deprivation of the Aircraft without claim or color of right and with an unreasonable risk of permanent loss to Plaintiff … immediately prior to its impacting with the earth, The Company is estopped and precluded from denying coverages and its duty to Defendant Plaintiff against the claims in the [Turner case].
>
> The Company's rejection of the claim for physical damage to the [A]ircraft, refusal to provide coverage for the bodily injury and death of Jacob Andrew Turner, and its withdrawal from defendant Plaintiff (individually) the claim made against him [in the Turner case] were actions made in bad faith.

(Doc. #3, *PageID* #72, ¶s 22-23).

Bad faith emerges again in Plaintiff Heins's Fifth Claim—"The Company has rejected the claim for the total physical loss of the aircraft contrary to the terms of the policy and in bad faith"—and in his Sixth Claim—asserting bad faith denial of funeral and burial expenses. *Id.*, *PageID* #73, ¶s 25, 27.

### III. Discussion

Plaintiff Heins does not argue that this Court lacks diversity jurisdiction or that removal was improper. For good reason: There appears no doubt that complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

*See* Doc. #28, *PageID* #s 4-8; *see also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). The presence of diversity jurisdiction is a salient point that Defendants emphasize in their fight against an Order remanding this case to state court. But before reaching this, more needs to be said about the Declaratory Judgment Act and the parties' declaratory-judgment arguments.

The Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be brought." 28 U.S.C. § 2201(a). "'[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.'" *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995)).

The parties first disagree over whether this case actually is a declaratory-judgment action. Plaintiff Heins maintains that this case "is essentially a declaratory judgment action" because he seeks to determine, in part, whether the aircraft insurance policy imposes certain obligations upon Defendant Commerce and Industry Insurance. (Doc. #7, *PageID* #133). He argues that Commerce and Industry Insurance is obliged:

1. to provide him (individually) with a defense in the Turner case;

2. to indemnify him for damages up to the limits of the aircraft insurance policy ($100,000);

3. to pay the stated value of the destroyed aircraft ($55,000); and

4. to pay him (as Administrator of his son's Estate) up to $10,000 in funeral and burial expenses.

6

*Id.*

From Defendants' viewpoint, Plaintiff Heins's characterization of this case as "essentially a declaratory judgment" constitutes a "post-removal re-characterization of his Complaint as a declaratory judgment action." (Doc. #11, *PageID* #191). Defendants urge the Court not to accept this re-characterization because the Complaint does not contain the term "declaratory" in any of its claims or in the multiple forms of relief it seeks and because the vast majority of its claims are for bad faith, waiver, and estoppel.

Defendants are correct that Plaintiff Heins's Complaint neither uses the term "declaratory" nor specifically seeks declaratory judgment as a remedy. These omissions, however, hold little import because a merits determination concerning most of Plaintiff Heins's claims will depend upon the rights and duties of the parties under the aircraft insurance policy. This is seen, for instance, in the need for declaratory judgment that springs from Plaintiff Heins's Third Claim, which states, "Under the terms of the Policy, The Company is required to defend and pay the claim alleged in the SIXTH cause of action …" in the Turner case. (Doc. #3, *PageID* #72, ¶20). The merit or lack of merit in this claim will require the determination of whether the aircraft insurance policy imposed these duties upon Defendant Commerce and Industry Insurance. This is declaratory-judgment stuff, even though Plaintiff Heins did not specifically call it that in his Complaint. *See, e.g., Mid-Continent Ins. Co. v. Coder*, 563 F. App'x 422, 423 (6th Cir. 2014) (declaratory-judgment action involving insurer's potential duty to defend).

It is, moreover, rather momentous to point out that under Ohio law, "[a]n insurer may be liable in tort when (1) without a lawful basis, it intentionally refuses to satisfy an insured's claim...." *Werner v. Progressive Preferred Ins. Co.*, 310 F. App'x 766, 769 (6th Cir.2009) (citing *Mid-Am. Fire & Cas. Co. v. Broughton*, 154 Ohio App.3d 728, 735 (2003)). Although this type of bad-faith claim sounds in tort, its resolution involves a determination of the parties' contractual rights and duties "because it alleges that the insurer had no lawful basis to deny coverage." *Broughton*, 154 Ohio App.3d at 735. Success here "is dependent on proving the underlying contract claim…." *Id.*; *see Lynde v. Blue Cross & Blue Shield Mut. of Ohio*, No. 93-4267, 1995 WL 242003, at *6 (6th Cir. 1995) ("Ohio's cause of action for bad faith is … rooted in Ohio's tort and contract law."). This is rather momentous because nearly all of the Plaintiff Heins's claims assert that Defendant Commerce and Industry Insurance acted in bad faith. Consequently, declaratory judgment, the primary mechanism needed to resolve his bad-faith Claims (2, 4-6) and his breach-of-contract Claim (3), is well imbedded in the Complaint.

Turning to Plaintiff Heins's main assertion that a remand to state court is warranted, he presents an analysis of 5 factors drawn from *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). At the core of his reasoning is what he sees as the potential conflict between this Court and the state court in which the Turner case is presently pending. He explains that the same issue—whether his son and Jacob Turner were involved in a theft offense at the time of the airplane crash—is present in both this

8

case and the Turner case. This creates the potential federal/state-court conflict, as Plaintiff Heins sees it.[3]

Defendants present competing reasons under each applicable factor and conclude that the factors all weigh in favor of this Court maintaining its jurisdiction over any of Plaintiff Heins's declaratory-judgment claims.

"[T]here is no per se rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990) *abrogated on other grounds by Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC,* 495 F.3d 266, 272 (6th Cir. 2007). "In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy*, 481 F.3d at 421.

The Supreme Court in *Brillhart*, as the Sixth Circuit has recognized, "warned district courts against '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation' and directed them to exercise discretion in deciding whether or not to proceed." *Id*. at 421 (quoting, in part, *Brillhart*, 316 U.S at 495).

The required analysis considers 5 factors:

(1) whether the judgment would settle the controversy;

---

[3] Plaintiff maintains that if his son and Jacob Turner did not commit a theft offense, Commerce and Industry Insurance cannot deny coverage under the aircraft insurance policy.

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Adrian Energy*, 481 F.3d at 422 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The discretionary nature of this inquiry has led the Sixth Circuit to carefully examine, on a case-by-case basis, the applicable factors. This has created a body of work in which a given case is more helpful for its thinking as to each applicable factor than for any particular discretionary decision to exercise, or not, declaratory-judgment jurisdiction. *See U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564, 2006 WL 41185, at *2 (6th Cir. 2006) ("Although the factual circumstances of *Northland*[4] bear some similarity to those in this case, *Northland* does not therefore mandate a reversal in this case but merely illuminates the broad discretion a district court enjoys under the Declaratory Judgment Act."). This body of work is well fed . *E.g., Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759-61 (6th Cir. 2014); *Travelers,* 495 F.3d at 272; *AmSouth Bank v. Dale*, 386 F.3d 763, 784-91 (6th Cir. 2004); *Bituminous Cas. Corp. v. J & L*

---

[4] Referring to *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448 (6th Cir. 2004).

*Lumber Co., Inc.*, 373 F.3d 807, 813-17 (6th Cir. 2004); *Scottsdale*, 211 F.3d at 968-69; *West American Ins. Co. v. Prewitt*, 208 F. App'x 393, 397 (6th Cir. 2006).

Factors 1 and 2

    Declaratory judgment in the present case would settle the insurance-coverage controversies between Plaintiff Heins and Defendants and would clarify their legal relations concerning coverage or non-coverage under the terms of the aircraft insurance policy. But so would a remand of this case to state court. The present case would not settle the wrongful-death claim at issue in the Turner case or clarify the legal relations of the parties involved in the Turner case. *See Travelers,* 495 F.3d at 272. Defendants point out that Defendant AIG Aerospace is not a party in the Turner case, that there are no claims for insurance coverage in the Turner case, and that the cases share very few factual or legal issues. But, there is more in common between the cases than Defendants acknowledge. The central factual issues in both cases will likely concern the circumstances surrounding how Plaintiff Heins's son and Jacob Turner gained access to the aircraft on the day of the crash. These issues will be pertinent to whether they were involved in a theft offense at the time the aircraft crashed—a possibility that needs to be explored and resolved in the both the present case and the Turner case. This similarity weighs against this Court's exercise of its discretionary jurisdiction to issue a declaratory judgment because the theft-related evidence and issues will be resolved in the Turner case. *See Travelers*, 495 F.3d at 272 ("Granting the declaratory relief … settles the scope of insurance coverage under the respective policies and clarifies their obligation to

defend Bowling Green in the state court action, but it does nothing to settle the controversy or 'clarify the legal relationship' between the other parties."); *cf. Prewitt*, 208 F. App'x at 397 (factor one favored exercising declaratory-judgment jurisdiction when the federal court's finding about the applicability of an insurance-exclusion provision involved a question not before the state court). The first and second factors therefore weigh against this Court's exercise of declaratory-judgment jurisdiction.

Factor 3

There is no indication that Commerce and Industry Insurance engaged in procedural fencing or attempted to race Plaintiff Heins to a federal forum by removing the case to this Court after it was filed in state court while the Turner case was pending. "Although no improper motive prompted this action, this factor is neutral." *Travelers*, 495 F.3d at 272.

Factor 4

Several ingredients make up factor 4's consideration of the potential for a federal declaratory judgment to create friction between the federal and state courts: "whether the underlying factual issues are important to an informed resolution of the case;… whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and… whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Scottsdale*, 211 F.3d at 968.

The fourth factor weighs heavily against exercising discretionary declaratory-judgment jurisdiction due to the high potential for federal/state-court friction and federal encroachment into an issue central to the Turner case. The underlying factual matters in the Turner case concern the circumstances leading to the aircraft crash. These factual matters will likewise arise in the present case as the parties debate whether the theft-exclusion provision in the aircraft insurance policy applies. Nailing down the facts shared by these cases carries the significant potential for inconsistent conclusions, a problem that weighs against this Court's exercise of declaratory-judgment jurisdiction. *See Scottsdale*, 513 F.3d at 560 ("sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court."). The state court, moreover, has at least a slight advantage in resolving the present insurance-coverage case due to the greater frequency its tort- and contract-law claims arise there under Ohio law. Undeniably, the present insurance-coverage dispute is within the particular concern of Ohio insurance law and policy. "'[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" *Bituminous*, 373 F.3d at 815 (quoting *Mercier,* 913 F.2d at 279); *see also Travelers*, 495 F.3d at 272 ("because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these [insurance terms and exclusion] issues."). And the present case does not have significant federal implications. It does not involve federal common law or federal statutory law. Indeed, it does not involve a federal question at all. This weighs against the exercise of discretionary

13

jurisdiction. *See Prewitt*, 208 F. App'x at 400 ("In this case, the state court is a better forum because there is no federal interest triggered by this litigation.").

In addition, if discovery disputes arise in the present case, any resulting order by this Court carries the potential to differ from discovery orders in the Turner case. Federal/state-court friction would result. No such friction would arise from a remand of this case to state court. It is far more practical for a single judge in the Darke County Court of Common Pleas to consistently manage both the Turner case and the present case. A single judge will be in a much better position to resolve discovery disputes with consistent decisions, to minimize duplication of discovery work, to keep an eye on the costs of litigating the present case and the Turner case, and to issue uniform decisions at every stage of the cases, including the summary-judgment stage.

In light of these considerations, factor 4 weighs heavily against the exercise of discretionary jurisdiction.

Factor 5

The fifth factor—whether there exists an alternative remedy that is better or more effective—shines a bright light on Ohio's Declaratory Judgment statutes, Ohio Rev. Code § 2721.01, *et seq*. In general, "Ohio's declaratory judgment statutes are broad in scope but not without limitation." *Cummin v. North*, 2:15cv1043, 2017 WL 4386809, at *8 (S.D. Ohio, 2017). Neither party has pointed to facts or law that would limit the power of the Ohio courts to issue a declaratory judgment under Ohio Rev. Code § 2721.02 in this case. Because of this, the fifth factor weighs against the discretionary exercise of

14

jurisdiction to issue a federal declaratory judgment. *See Scottsdale*, 513 F.3d at 562 (same remedies available in state court weighed against federal discretionary jurisdiction).

In sum, the applicable considerations—when examined individually and contemplated together (including neutral factor 3)—weigh against the exercise of declaratory-judgment jurisdiction in the present case.

* * *

Defendants contend that decisions by Sixth Circuit and its district courts hold, "when a plaintiff has claims in addition to declaratory judgment claims, such as injunctive relief, monetary damages, and bad faith claims…, the district court must exercise jurisdiction over those claims if the subject matter jurisdictional requirements are otherwise satisfied, and not remand the claims to state court." (Doc. #11, *PageID* #193). In support of this, Defendants rely on the following statement from *Adrian Energy*:

> When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources.

481 F.3d at 422 (emphasis in original). There is a crucial distinction between the claim the district court was required to address ("*must address*") in *Adrian* and the diversity-jurisdiction claims in the present case. The plaintiff's claims in *Adrian*, included a claim under the Federal Power Act. 481 F.3d at 418. The district court had "exclusive jurisdiction" over that claim. *See* 16 U.S.C. § 825p ("The District Courts of the United

15

States…, shall have exclusive jurisdiction of violations of this chapter…, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."). This exclusive jurisdiction meant mandatory federal judicial review ("*must address*") because no state court had the power to adjudicate the federal claim. Consequently, in the passage Defendants quote, the Sixth Circuit was saying that when a plaintiff seeks relief on a federal claim over which the district court has exclusive jurisdiction and "*must address*, then denying the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated…." *Id*. Because this passage concerns exclusive, mandatory federal-court jurisdiction, it is distinguished from the present case in which both this Court and the state court have jurisdiction over Plaintiff Heins's state-law claims. Additionally, the benefits of having the leeway to decline declaratory-judgment jurisdiction are apparent here—the main benefit being to eliminate any possibility of friction and inconsistent rulings created by proceeding with this case while the Turner case continues.

Hold on, Defendants say, this Court has mandatory jurisdiction to adjudicate Plaintiff Heins's state-law claims under its undisputed diversity jurisdiction and given Defendants' proper removal of the case from state court. Defendants contend that because this Court has mandatory jurisdiction over Plaintiff Heins's state-law claims, it must hear those claims and the issue of whether this Court should exercise its discretionary declaratory-judgment jurisdiction does not presently arise. To support this, Defendants harken to *Adrian's* "*must address*" language and to its close cousin,

16

*Knowlton Const. Co. v. Liberty Mut. Ins. Co.*, No. 2:07cv748, 2007 WL 4365690 (S.D. Ohio 2007), *Report and Recommendation adopted*, *id*. at *1 (Dec. 13, 2007).

As explained above, Defendants' reliance on the "must address" language in *Adrian* is misplaced. As for *Knowlton*, it has more in line with the present case.

*Knowlton* is a case arising under federal diversity jurisdiction over claims (breach of contract and bad faith) under Ohio law. The plaintiff in *Knowlton* sought declaratory judgment concerning the defendant insurance company's possible duty to defend or indemnity under the terms of an insurance policy. The insurance company properly removed the case to federal court based on diversity jurisdiction. Relying on four cases from the Ninth Circuit Court of Appeals, the district court in *Knowlton* observed, "The exercise of jurisdiction over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim." 2007 WL 4365690, at *3 (citing and quoting parenthetically, *United Nat'l Ins. Co. v. R & D Latex Corp.,* 242 F.3d 1102 (9th Cir. 2001) (quoting *Snodgrass v. Provident Life and Acc. Ins. Co.,* 147 F.3d 1163, 1167-68 (9th Cir. 1998)); *Gov't Empls. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225-26 n. 6 (9th Cir. 1998); *Southwind Aviation, Inc. v. Bergen Aviation, Inc.,* 23 F.3d 948, 951 (5th Cir. 1994)). The district court then reasoned and held, "the Court is faced with a request to remand an entire case to state court when the removal was proper, and where the Court has a mandatory obligation to exercise jurisdiction over two of the three claims in the complaint. Such remand is simply improper." *Id*. The district court declined to address the issue of whether it should exercise its declaratory-judgment jurisdiction "because that determination is irrelevant to the question of remand." *Id*. The district court also did not

explain its conclusion that it had "a mandatory obligation to exercise…" its diversity jurisdiction. *See id*.

Several problems arise. First, *Knowlton* never reached the Sixth Circuit Court of Appeals, and it consequently lacks the precedential gravitas of a Sixth Circuit decision. Second, *Knowlton* cites to Ninth Circuit cases, none of which are controlling in the present case. Third, those Ninth Circuit cases invoke the familiar refrain that a federal court has a "virtually unflagging obligation" to exercise its diversity jurisdiction. *See Dizol,* 133 F.3d at 1225-26 n. 6. This refrain is unassailable given it lineage. *Colorado River Water Consv. Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have "the virtually unflagging obligation … to exercise the jurisdiction given them.").

*Knowlton*, however, does not adhere closely to the "virtually unflagging obligation" language. "Virtually unflagging" does not mean district courts have an *absolutely* unflagging duty to exercise jurisdiction. *See Gray*, 628 F.3d at 783 ("However strict, even 'unflagging,' this duty might be, it is not absolute.").[5] A "virtually unflagging" duty is also not a "mandatory" duty to exercise jurisdiction, as *Knowlton* incorrectly characterized it. *See Knowlton*, 2007 WL 4365690, at *3 ("the Court has a mandatory obligation to exercise [diversity] jurisdiction….").

Even more significantly, *Knowlton*'s faith in "mandatory" jurisdiction runs afoul of the Declaratory Judgment Act. The Supreme Court explains, "district courts possess

---

[5] Although the limit of the court's unflagging duty to exercise its jurisdiction is often tested in abstention cases, *Gray* points to other types of cases that district courts have the discretion to dismiss—including declaratory judgment actions. *Id*. at 784 (citing *Wilton*, 515 U.S. at 282).

18

discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit *otherwise satisfies* subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282 (emphasis added). Consequently, although diversity jurisdiction is not disputed and "otherwise satisfies" subject matter jurisdiction in this case, the Declaratory Judgment Act grants this Court discretion to determine whether it should exercise its declaratory-judgment jurisdiction. Having done so above, an Order remanding the case to state court is warranted.

Accordingly, Plaintiff Heins's Motion to Remand is well taken.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff Heins's Motion to Remand (Doc. #7) be granted;

2. The case be remanded to the Clerk of Court, Darke County Court of Common Pleas; and

3. The case be terminated on the docket of this Court.


October 24, 2017         *s/Sharon L. Ovington*
                         Sharon L. Ovington
                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).