**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

PETER H. HEINS, *et al.*,                 :    Case No. 3:17-cv-110
                                          :
            Plaintiffs,                   :
                                          :    District Judge Walter H. Rice
                                          :    Magistrate Judge Sharon L. Ovington
vs.                                       :
                                          :
COMMERCE AND INDUSTRY                     :
INSURANCE COMPANY, *et al.*,              :
                                          :
            Defendants.                   :

═══════════════════════════════════════════════════════════════

## ORDER

═══════════════════════════════════════════════════════════════

### I.    <u>Introduction</u>

At the heart of this case is a devastating plane crash that killed two people—

Clayton M. Heins and Jacob A. Turner.  Unfortunately, after the tragic accident, disputes

arose concerning insurance coverage of the plane.  This ultimately led Plaintiff Peter H.

Heins, individually and as Administrator of the Estate of Clayton M. Heins, to bring this

case against Defendants Commerce and Industry Insurance Company, AIG Aerospace

Insurance Services, Inc., and AIG Aerospace Adjustment Services, Inc.

This case is presently before the Court upon Plaintiff's Motion for Sanctions and

to Compel Discovery (Doc. #40), Defendants' Opposition (Doc. #41), Plaintiff's Reply

(Doc. #42), Plaintiff's Third Motion to Compel Discovery and for Sanctions (Doc. #49),

Defendants' Opposition (Doc. #50), Plaintiff's Reply (Doc. #52), Defendants' Notice of

Supplemental Materials (Doc. #54), and Plaintiff's Reply (Doc. #61).

## II.   **Background**

Plaintiff[1] is the father of Clayton M. Heins and the owner of the plane that was involved in the crash.  Prior to the crash, he purchased an aircraft insurance policy for the plane from Defendant Commerce and Industry Insurance.  Plaintiff asserts that at the time of the plane crash, this policy was in effect, provided coverage for property damage to the aircraft and other losses, and required Defendant to "defend and settle any suit or claim covered by this insurance."  (Doc. #3, *PageID* #69, ¶5) (internal quotation marks omitted).  After the accident, he requested that Defendant Commerce and Industry Insurance "provide Plaintiff (individually) with a defense to any and all claims which might be asserted by the … estate of Mr. Jake Turner…."  *Id*. at 69, ¶7.

A few months later, the Administrator of Jacob Turner's Estate filed a wrongful-death case against Plaintiff.  As requested, Defendant AIG Aerospace (as Commerce and Industry Insurance's agent) agreed to defend Plaintiff in accordance with the terms of the policy.  But the defense was short-lived.  After filing an answer on Plaintiff's behalf, Defendant Commerce and Industry Insurance informed him that "it was rejecting the claim of physical damage to the aircraft; it was not providing coverage for the bodily injury and death of Jacob Turner; and, it was not providing Plaintiff (Individually) with a defense to the claim against him made in [the Turner case]."  *Id*. at 71, ¶14.  The present case followed.

---

[1] For simplicity sake, Plaintiff Peter H. Heins is referred to herein in the singular "Plaintiff" even though he brings claims on behalf of himself, individually, and as Administrator of Clayton M. Heins's Estate.

## III.  **Standard of Review**

Under the Federal Rules of Civil Procedure, the scope of discovery is "traditionally quite broad."  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  But, "this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

A party may file a motion to compel discovery when a deponent fails to answer a question under Rules 30 or 31.  Fed. R. Civ. P. 37(a)(3)(B).  "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Mayer v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:15-cv-2896, 2016 WL 1632415, at *2 (S.D. Ohio Apr. 22, 2016) (Deavers, M.J.), *objections overruled*, 2016 WL 2726658 (S.D. Ohio May 10, 2016) (Marbley, D.J.) (quoting *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, M.J.); *Clumm v. Manes*, No. 2:08-cv-567 (S.D. Ohio May 27, 2010) (King,

M.J.)); *see also United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("In cases where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is within the scope of discoverable information under Rule 26."). If the proponent meets its initial burden, then "the party resisting production has the burden of establishing that the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Pillar Title Agency v. Pei*, No. 2:14-cv-525, 2015 WL 2238180, at *3 (S.D. Ohio May 12, 2015) (Kemp, M.J.) (citing *Vickers v. Gen. Motors Corp.*, No. 07-2172 M1/P, 2008 WL 4600997, at *2 (W.D. Tenn. Sept. 29, 2008)).

## IV.  Discussion

Thus far, discovery in this case has been quite contentious.  There have been several disputes between the parties and extensive motion practice—including three motions to compel (two with requests for sanctions), a motion for a protective order, and a motion for sanctions.  This Order addresses Plaintiff's first and third motions to compel and for sanctions.  (Doc. #s 40, 49).

Plaintiff seeks an order compelling witnesses to answer deposition questions and produce documents.  He also asserts that Defendants' response to his request for admission is improper and asks the Court to deem it admitted.  He requests sanctions for the time it took to prepare the motions, for additional depositions, and for the costs of establishing the facts in his request for admission.

*Mr. Talbot's and Mr. Harder's Missing Records*

The parties' first dispute centers around the depositions of Russell Talbot, an AIG claim representative, and Richard Harder, an AIG major-loss adjuster. Mr. Talbot testified at his deposition on March 20, 2018 that he kept a claim file and computerized time records of his activities. (Doc. #40, *PageID* #389). A few days later, on March 23, 2018, Mr. Harder testified that he kept an annotated electronic activity/time record. *Id.* Although both indicated that they provided these records to Defendants' counsel, Defendants did not disclose them to Plaintiff. *Id.*

Upon hearing about these documents—on the same day that each deposition occurred—Plaintiff's counsel, Mr. Kuczak, sent a letter to Defendants' counsel, Mr. Schmidt and Mr. Torpey, requesting the documents be produced by March 29, 2018. *Id.* at 403-06. On March 29th, Defendants reported that they were still reviewing the records and would produce them as soon as possible. *Id.* at 407. A few days later, on April 4, 2018, Mr. Kuczak canceled a deposition scheduled for April 13, 2018 in Portland, Oregon[2] because he had not received the documents and did not want to conduct further depositions until he received, reviewed, and organized the requested documents. *Id.* at 410-11. The next day, Defendants said that they should have the records to him by Monday at the latest. *Id.* at 409. But it was not until a week after that Monday (April 16, 2018) that Defendants produced their Second Supplemental Responses to Plaintiff's First

---

[2] To their credit, Defendants agreed to reimburse Mr. Kuczak for his non-refundable airfare. (Doc. #41, *PageID* #433).

Request for Production of Documents and amended privilege log. (Doc. #41, *PageID* #s 441-69).

Defendants assert that because they produced these documents, this issue is moot. *Id.* at 415-16. They insist, "there is nothing new in this latest document production that was not previously addressed at the Talbot and Harder depositions and/or in the voluminous documents produced before their depositions." *Id.* at 417. Most of Mr. Talbot's notes are "cut and pasted emails" that had already been produced. *Id.* Defendants attached Mr. Talbot's newly produced claim-file notes and highlighted the new material. *Id.* at 417, 440-69.

But why were these records not produced before the depositions? According to Defendants, "because Defendants' counsel was not aware such records existed … until Talbot and Harder testified …." *Id.* at 415-16. It was "an innocent oversight." *Id.* at 416. Indeed, according to Defendants, these notes were "actually quite helpful to the Defendants' defense …." *Id.* at 417.

Plaintiff acknowledges that Defendants produced some of the requested documents. However, "several documents which were alluded to by Mr. Talbot and Mr. Harder remain withheld." (Doc. #42, *PageID* #476). He identifies five categories. First, Mr. Talbot's hourly billing statements appear incomplete as they do not correspond to events identified in previous emails or known by Plaintiff. *Id.* at 477. Second, Mr. Harder's records show that he only worked on Plaintiff's claim twice. But there are emails and testimony that show he worked after the dates identified in his records. *Id.* Third, Mr. Talbot alluded to both a timestamp on previously produced emails and a

"block" he sometimes used for notes. The documents do not have either. *Id.*; *see* Doc. #40, *PageID* #398) ("There are occasions where I would enter notes into my claim file and those notes have a time stamp."); ("There is room to put [a] short explanation of what was done during that billable time. There are occasions when I will input information in that block. I'm sure there are occasions when I've not put information in that block."). According to Plaintiff, some documents have suspicious blocks for Bates Numbers where the block for notes should be. Fourth, there are no handwritten notes in the adjusters' claims files. (Doc. #42, *PageID* #477). Last, there is nothing that alludes to Defendant Commerce and Industry's role in processing Plaintiff's claim. *Id.*

The absence of some of these documents is explained by a significant mistake on Defendants' privilege log. And this requires a little explanation. After Plaintiff filed his Reply (in support of his third motion to compel), Defendants unexpectedly filed a "Supplemental Materials in Support of Its Opposition …." (Doc. #54). As it turns out, Defendants, upon review of their privilege log, found "a few of the dates in Defendant[s'] privilege log excerpt … were off by one year due to an unknown clerical/computing error." *Id.* at 920. Defendants fixed their log and sent the amended version to Plaintiff's counsel with a letter explaining the error.

Notably, more than a few dates were incorrect. On the sample they included for the Court, there were at least ten corrected dates. *Id.* at 928, 937. Defendants' mistakes caused Plaintiff's counsel to expend significant amounts of time. Further, their errors led—at least in part—to Plaintiff's motions and are the basis of several disputes between the parties' counsel.

Moreover, based on Plaintiff's list, there may still be documents outstanding. If so, Defendants must produce them within seven days of this Order. If Defendants do not have any additional documents or modifications to their privilege log, Defendants' counsel must file an affidavit with the Court stating that they have provided all of Plaintiff's requested documents, all documents that were not produced are privileged, and the privilege log is accurate. The Court encourages Defendants and their counsel to review their records related to this case—including produced discovery, privileged documents, and privilege log to ensure there are no further mistakes or omissions.

Plaintiff asserts, "[r]egardless of whether the withheld documents are produced, it nonetheless appears that it will be necessary to take additional depositions of Mr. Talbot and Mr. Harder as a result of Plaintiff being deprived of the documents necessary to effectively examine these witnesses at the time of their … depositions." (Doc. #40, *PageID* #390). "Defendants oppose any taking of a second deposition of Talbot and Harder …." (Doc. #41, *PageID* #422).

When the parties will not stipulate to a second deposition, Federal Rule of Civil Procedure 30 requires leave of court to conduct it. "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): (A) if the parties have not stipulated to the deposition and: …(ii) the deponent has already been deposed in the case …." Fed. R. Civ. P. 30(a)(2). Rule 26 directs the court to "limit the frequency or extent of discovery … if it determines that: [] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive …." Fed. R. Civ. P.

26(b)(2)(C)(i); *see Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 476-77 (S.D. Ohio 2014) ("once the deposing party has had a full opportunity to question a witness, doing that for a second time is presumptively duplicative and it is appropriate to ask the requesting party to explain what else might be asked that has not already been covered adequately in the first proceeding.") (discussing *Salter v. Upjohn*, 593 F.2d 649 (5th Cir. 1979) (citing *Cf. Powell v. United Parcel Service, Inc.*, 2011 WL 124600, *1 (S.D. Ind. Jan. 13, 2011)). "Typically, if, after a witness is deposed, new information comes to light relating to the subject of that deposition, new parties are added to the case, new allegations are made in pleadings, or new documents are produced, the witness may be re-deposed with respect to these new developments." *Morrison v. Stephenson*, No. 2:06-CV-0283, 2008 WL 145017, at *2 (S.D. Ohio Jan. 10, 2008) (citing *Keck v. Union Bank of Switzerland*, 1997 WL 411931 (S.D.N.Y. July 22, 1997)).

In the present case, new documents have been produced (and more could be produced soon). However, Plaintiff learned of the existence of the missing documents during Mr. Talbot's and Mr. Harder's deposition testimony. Thus, he had at least a smidgen of opportunity to ask questions about these documents. Further, Plaintiff has not identified any specific questions about or based on the newly produced evidence. Although Defendants attached some of the newly produced documents with the new information highlighted, the Court cannot properly evaluate its significance in this case without supplementary information. If Defendants produce additional documents and/or Plaintiff identifies *specific* questions arising *only* from the new documents, the Court will

reconsider this issue.  At present, based on the evidence before the Court, a second

deposition of Mr. Talbot or Mr. Harder is not necessary and would be duplicative.

*Coaching Mr. Talbot*

Plaintiff's next claim also concerns Mr. Talbot's deposition.  Plaintiff asserts

Defendants' counsel, Mr. Torpey, improperly coached Mr. Talbot during a break in his

deposition.  Specifically, before the break, Plaintiff's counsel, Mr. Kuczak, asked, "Do

you or do you not dispute that the policy … provides for coverage for a total loss for the

aircraft if that loss occurred in the form of a theft?"  (Doc. #40, *PageID* #401).  After

Defendants' objection, Mr. Talbot answered, "If the loss occurs in the form of theft, I

would agree."  *Id*.  Mr. Kuczak stated, "Thank you."  *Id.*  Suddenly, Mr. Torpey

interjected that they needed to take a break so Mr. Talbot could answer an important

phone call about the status of his flight home.  *Id.*  Upon their return from the break, Mr.

Talbot announced, "I would like to complete that answer, if I could."  *Id.*  When Mr.

Kuczak asked if he discussed his answer with counsel during the break, Mr. Torpey

intervened:  "You have no right to ask about attorney-client communication. …"  *Id.* at

391.  The attorneys continued to quarrel until, eventually, Mr. Talbot completed his

response—"Subject to any exclusions that may exist in the policy."  *Id.* at 401-02.

Defendants maintain that the conversation during the break between Mr. Talbot

and his counsel is protected by attorney-client privilege.  Further, "nothing prevents a

witness from expanding on a previous answer or even changing their testimony during a

deposition."  (Doc. #41, *PageID* #420).

Although Plaintiff suggests otherwise, there is no convincing reason to believe that Mr. Talbot's phone call was a ruse to change his answer. Nonetheless, Defendants' counsel's conduct was improper.

"[I]n general, a deponent and the deponent's attorney have no right to confer during a deposition, except for the purpose of determining whether a privilege shall be asserted." *Morales v. Zondo*, 204 F.R.D. 50, 53 (S.D.N.Y. May 4, 2001) (citing *Am. Fun & Toy Creators v. Gemmy Indus.*, case no. 96 Civ. 0799, 1997 U.S. Dist. LEXIS 12419, 1997 WL 482518 (S.D.N.Y. Aug. 21, 1997)); *see Pastura v. CVS Caremark*, case no. 1:11-cv-400, 2012 U.S. Dist. LEXIS 72179, *5-6 (S.D. Ohio May 23, 2012) (Litkovitz, M.J.) (Conversations between the deponent and attorney are protected by attorney-client privilege because the purpose of the conversation was to determine whether to assert the privilege.). This generic rule has been interpreted in many ways. For instance, some courts struggle with the idea of an absolute rule prohibiting communication between a deponent and counsel during depositions. *See United States. v. Philip Morris, Inc.*, 212 F.R.D. 418, 420 (D.D.C. 2002) (citing *Odone v. Croda Int'l PLC*, 170 F.R.D. 66, 68 (D.D.C. 1997)) ("there is by no means a categorical prohibition on communications once a deposition has commenced."). In contrast, other courts have found that a deponent can confer with counsel about anything during breaks so long as there is no question pending.[3] *McKinley Infuser v. Zdeb*, Civ. Action No. 99-S-1178, 200 F.R.D. 648, 650

---

[3] In the present case, Mr. Talbot did not ask to *change* his response, he asked to *complete* it. That implies that he had not completed his response before the break. However, he responded, Plaintiff's counsel said "Thank you,"—suggesting Mr. Talbot's answer was complete—and then Defendants' counsel interrupted with the phone call.

(D. Col. June 7, 2001) (citing *In re Stratosphere Corp. Securities Litigation*, 182 F.R.D. 614, 621 (D. Nev. 1998)) ("[O]ther consultations, during periodic deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate.").

Another court recognized the lack of case law in its district (Middle District of Tennessee) and from the Sixth Circuit regarding a deponent's ability to consult with counsel during a break when a question is not pending. *Cullen v. Nissan N. Am., Inc.*, case no. 3-09-0180, 2010 U.S. Dist. LEXIS 152545, *20, 2010 WL 11579750 (M.D. Tenn. Feb. 2, 2010) ("[B]ecause of the lack of unanimity among courts addressing this issue, this Court cannot find that the plaintiff's conference with his counsel during the lunch break was clearly prohibited and thus not protected by attorney-client privilege.").

In the Southern District of Ohio, at least one court has found that the general rule applies. *See Pastura*, 2012 U.S. Dist. LEXIS 72179. Although there could be circumstances—for example, a multi-day deposition—where the general rule might not apply, in the present case, those circumstances do not exist. Mr. Talbot's emergency phone call was a valid reason to take a break. After the call, there is no indication that Mr. Torpey and Mr. Talbot were discussing whether he should assert attorney-client privilege. Accordingly, Mr. Torpey's instruction not to respond to Mr. Kuczak's question was improper.

Plaintiff seeks an order compelling a second deposition of Mr. Talbot at Defendants' expense and response to the question of whether he supplemented his response "at the behest of counsel …." (Doc. #40, *PageID* #393).

Although Mr. Torpey's direction not to answer was improper, a second deposition solely to ask what Mr. Talbot and his counsel discussed during the break is unreasonable. *See Morrison*, No. 2:06-CV-0283, 2008 WL 145017, at *2 ("The principles guiding the Court's discretion are those set forth in Rule 26(b)(2), which include whether the second deposition of the witness would be unnecessarily cumulative, … and whether the burden of a second deposition outweighs its potential benefit.") (citing *Collins v. International Dairy Queen*, 189 F.R.D. 496 (M.D.Ga. 1999); *Hurley v. JARC Builders*, 164 F.R.D. 39 (E.D. Pa. 1995)).

*Joe Shelby's Deposition*

The parties' counsel had yet another disagreement during a deposition—this time, of Joe Shelby, a former employee of Defendant AIG. Plaintiff's counsel asked, "Do you know whether or not Mr. Torpey or Mr. Schmidt advised you, prior to the denial of coverage, what the current law of the state of Ohio was at the time regarding the word 'theft' in insurance policies?" (Doc. #49, *PageID* #784). Defendants' counsel, Mr. Torpey, objected—"He's not going to answer any questions about what was discussed with counsel"—and refused to allow Mr. Shelby to answer. *Id.* at 786. But, Plaintiff's counsel insisted, "My question is prior to the denial of coverage." *Id.*

Defendants assert that if he was compelled to answer, Mr. Shelby would say that he could not have discussed any matter with Mr. Torpey or Mr. Schmidt prior to the denial of coverage on February 22, 2017 because they were not retained until March 9,

[2017].[4]  This reasonably perplexed Plaintiff because Defendants' privilege log indicated

Mr. Schmidt, Mr. Torpey, and Mr. Olie Jolstad emailed each other about the case on

January 29, 2017.  (Doc. #49, *PageID* #826).

Unfortunately, this was another error caused by Defendants' privilege-log debacle.

The corrected log indicates those emails were sent in 2018—after the denial of coverage.

(Doc. #54, *PageID* #928).  Because of the corrections, Defendants claim this issue is

moot.

Plaintiff questions Defendants' integrity:  "Defendants re-invented their own

Privilege Log to justify defense counsel's less than appropriate behavior."  (Doc. #61,

*PageID* #1473).  Although Plaintiff's frustration is understandable, there is no evidence

to suggest Defendants intentionally provided an inaccurate privilege log or that it, as

amended, is inaccurate.  Still, Defendants' failure to catch their mistake before drafting

their Opposition to Plaintiff's Motion is careless and suggests a flippant attitude.  Indeed,

if Defendants' counsel at Mr. Shelby's deposition reasonably considered Plaintiff's

counsel's objection—rather than summarily rejecting it—he could have caught the

mistake on the privilege log much sooner.  Nonetheless, at this time, based on

Defendants' revised privilege log, there is no need for an *in camera* review of the

documents in question.  There is likewise no need to depose Mr. Shelby a second time.

---

[4] Based on the other dates, the Court assumes that Defendants' counsel accidently typed 2016 instead of 2017.
(Doc. #50, *PageID* #850).  Nonetheless, for the reasons explained above, both are incorrect.

*Monetary Sanctions*

Defendants first failed to produce all of Mr. Talbot's and Mr. Harder's relevant, non-privileged claim-file documents. When Plaintiff correctly identified and requested those documents, Defendants made several representations that the documents would be produced quickly (or by a certain date) and then failed to deliver. Plaintiff contends that there are more documents that have yet to be produced. Even if there are not, at the time Plaintiff filed his motion, he accurately described several documents that were not produced and thus, it was reasonable to seek Court intervention. Further, to the extent some of the documents identified by Plaintiff do not exist, he reasonably relied on Defendants' incorrect privilege log. Given Defendants' significant avoidable error, Defendants must pay Plaintiff the reasonable fees and expenses associated with preparing Plaintiff's Motion to Compel and for Sanctions (Doc. #40). *See* Fed. R. Civ. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.").

Likewise, Plaintiff reasonably relied on Defendants' incorrect privilege log in support of part of his third motion. Their incorrect privilege log caused severe disruption to the flow of discovery—for instance, Mr. Shelby's deposition. Further, Defendants ignored or overlooked their mistakes on their privilege log until after responding in opposition and after Plaintiff replied. Accordingly, Defendants must pay Plaintiff's reasonable fees and expenses associated with preparing Plaintiff's Reply to Defendants' Opposition (Doc. #52) and Plaintiff's Reply to Defendants' Submission of Supplemental Materials (Doc. #61).

Plaintiff sent only one request for admission to Defendants: "Pursuant to FRCP 36, Admit that the incident which occurred on September 14, 2016, which precipitated the claim by the insured Peter H. Heins under Commerce and Industry Insurance Company Policy No. No. LP006364456-01, was a theft of the entire aircraft." (Doc. #49, *PageID* #s 833, 835). Plaintiff limited the response area to two boxes to check for either "admit" or "deny." *Id.*

Defendants objected on several grounds. They believe the format is not in accordance with Fed. R. Civ. P. 36 or the Southern District of Ohio's Civil Rules. *Id.* at 839. Further, they object to Plaintiff's failure to define "theft." *Id.* And, "[w]ithout waiving any objections, the issue of Defendants' position regarding theft versus total loss of the Aircraft was addressed in the depositions of Russ Talbot and Richard Harder." *Id.* at 840.

Federal Rule of Civil Procedure 36 provides the standard for requests for admission. "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: [] facts, the application of law to fact, or opinions about either …." Fed. R. Civ. P. 36(a)(1). Section (a)(4) explains the rules for responding to such a request: "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter …." And, section (a)(5) sets the rules for objections: "The grounds for objecting to a request must be stated. A party must not object solely on the

ground that the request presents a genuine issue for trial." If a court finds that an answer does not meet these requirements, "the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

"Requests for admissions are not a general discovery device." *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 (6th Cir.1986) (citations omitted). Rule 36's "proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove." *Khami v. Ortho–McNeil–Janssen Pharm., Inc.*, 2011 WL 996781 at *2 (E.D. Mich. Mar.17, 2011) (citing *Misco,* 784 F.2d at 205) (other citation omitted); *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D.W.Va.2010). "Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness." 8B Wright, Miller, & Marcus, Federal Practice & Procedure, § 2253 (3d Ed.2010) (citing *Misco,* 784 F.2d at 205; other citations omitted).

Plaintiff believes Defendants' response is inadequate and sent a letter to them explaining why. *Id.* at 791, 833-36. But the letter did not persuade Defendants to change their response and, Plaintiff moved the Court to deem the fact admitted, and he "seeks sanctions on Defendants for the reasonable costs of establishing that fact and the cost of preparing the motion." *Id.* at 785.

Defendants' objection on the basis of formatting issue is largely semantics. Nevertheless, the Federal Rules of Civil Procedure do not require a party to select either yes or no; there is a third option—"state in detail why the answering party cannot

truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Although Plaintiff did not provide space for an explanation, Defendants found a way to provide a response and thus, this issue is moot.

In contrast, Defendants' objection on the grounds that Plaintiff did not provide a definition of "theft" is sufficient. Whether the incident referred to by Plaintiff constitutes "theft of the entire aircraft" depends on the definition of "theft." And, determining which definition is applicable is a question of law, and a request for admissions of law is inappropriate. *See Reichenbach v. City of Columbus,* 2006 WL 143552 at *2 (S.D. Ohio Jan.19, 2006) (King, M.J.) ("'a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered inappropriate.'"); *see Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL 1165034, at *2 (S.D. Ohio Mar. 20, 2013). Further, although Plaintiff tried to point Defendants to Ohio's definition of theft based on the policy, Defendants' assertion that Plaintiff misunderstood the policy demonstrates a lack of clarity. Thus, Defendants' objection on this basis constitutes a valid objection.

Finally, turning to Defendants' response—they claim that their position on whether there was theft versus total loss of the aircraft was discussed in the depositions of Mr. Harder and Mr. Talbot.[5] Defendants' response is wishy-washy, at best. At the very least, they should have included citations to the deposition testimony. Or, they could have said exactly what they assert in their opposition memorandum: "Defendants

---

[5] Because Defendants' objection regarding the definition of "theft" is a sufficient response to Plaintiff's Request for Admission, the flaw in this response does not affect the outcome.

disagree with Plaintiff that a 'theft' of the Aircraft occurred, which is supported not only by the deposition testimony of Mr. Talbot and Mr. Harder, but also by the publicly-available NTSB report for this Incident and the police report for this Incident, neither of which concluded that a theft occurred." (Doc. #50, *PageID* #850) (citations omitted). This response is significantly clearer than the one provided in response to Plaintiff's Request for Admission.

Plaintiff's counsel argues that, because Mr. Talbot and Mr. Harder do not have evidence to show that Clayton Heins had permission to fly his father's plane, Defendants must admit that it was theft. Plaintiff's counsel's logic is flawed. And, Plaintiff failed to provide any source of authority for his conclusion that the absence of evidence showing permission proves theft. Accordingly, Plaintiff's assertion lacks merit and his facts are not deemed admitted.

*Local Rule Violation*

Defendants insist that Plaintiff's Motions (Doc. #41, *PageID* #415), (Doc. #50, *PageID* #849) violate Southern District of Ohio Civil Rule 37.1. Under that Rule, parties are required to exhaust all extrajudicial means for resolving differences before filing a motion under Federal Rules of Civil Procedure 26 or 37. S.D. Ohio Civ. R. 37.1. Once the parties have exhausted those means, "any party *may* first seek an informal telephone conference with the Judge assigned to supervise discovery in the case." S.D. Ohio Civ. R. 37.1. (emphasis added).

Based on the record available to the Court, it appears that Plaintiff correctly exhausted extrajudicial means for resolving differences before filing motions. Given the

animosity between the parties' counsel, it was reasonable for Plaintiff not to seek a telephone conference. As Plaintiff points out, the transcript of Mr. Shelby's deposition illustrates significant friction between counsel. (Doc. #49, *PageID* #815) (Defendants' counsel, Mr. Torpey: "I think you need to go and take … something to relax you, Konrad [Kuczak, Plaintiff's counsel]. You're really a little bit out of control today … More than usual. … Which is hard to do."). Thus, Defendants' assertion that Plaintiff violated S.D. Ohio Civ. R. 37.1 lacks merit.

Notably, both parties violated S.D. Ohio Civ. R. 7.2(a)(2). Rule 7.2 allows for one memorandum in opposition and one reply memorandum. "No additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Thus, Defendants should not have filed their Notice of Supplemental Materials (Doc. #54) and Plaintiff should not have filed his Reply (Doc. #61) without leave of the Court. Nonetheless, there appears to be good cause for both filings, and neither will be stricken from the record.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Motion for Sanction and to Compel Discovery (Doc. #40) is granted, in part, and denied, in part;

2. Plaintiff's Third Motion to Compel Discovery and for Sanctions (Doc. #49) is granted, in part, and denied, in part;

3. Defendants must produce all outstanding documents requested by Plaintiff within seven days of this Order. If Defendants do not have any additional documents or additions/modifications to their privilege log, Defendants' counsel must file an affidavit with the

Court stating that it has provided all of Plaintiff's requested documents, all documents that were not produced are privileged, and the privilege log is accurate;

4.    Defendants must pay Plaintiff's reasonable fees and expenses associated with preparing Plaintiff's Motion to Compel and for Sanctions (Doc. #40), Plaintiff's Reply to Defendants' Opposition (Doc. #52) and Plaintiff's Reply to Defendants' Submission of Supplemental Materials (Doc. #61). Plaintiff is directed to file a declaration documenting his reasonable fees and expenses within 5 days of this Order. Defendants may, but are not required to, respond to Plaintiff's declaration within 5 days after it is filed; and

5.    Plaintiff's Motion to Delay Plaintiff's Responses to Defendants' Motion (Doc. #47) is DENIED as moot.

October 15, 2018                            *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge